Irvin **MILLER**, Plaintiff,

v.

**CITY OF WILMINGTON**, Defendant.

Court of Chancery of Delaware,
New Castle.

Nov. 30, 1971.

---

Stephen B. Potter, of Sullivan, Potter & Roeberg, Wilmington, for plaintiff.

Daniel M. Kristol, Asst. City Sol., for defendant.

SHORT, Vice Chancellor:

Plaintiff seeks a judgment declaring that he is entitled to receive a disability pension from the City of Wilmington (City). This is the decision on plaintiff's motion for summary judgment.

The uncontroverted facts which have thus far been established are these: Plaintiff, on or about March 3, 1967, had been a member of the Wilmington police force for approximately 10 years. On that date, plaintiff was injured in the course of his police duties while riding a motorcycle belonging to the City, causing permanent, partial disability of his back and right leg. From March 4, 1967 to April 5, 1967, plaintiff was placed on light duty.

On April 5, 1967, in the face of pending criminal charges placed against him, plaintiff resigned from the Police Department (Department), unaware of the fact that he had sustained a permanent injury. After the criminal charges were *nolle prossed* by the State of Delaware, plaintiff applied on October 16, 1967 for reinstatement to his position with the Department. This application was denied. He thereafter, on October 28, 1967, applied for a disability pen-

sion for injuries caused by the accident of March 3, 1967. No consideration was or has been given that application by the Trustees of the Police Pension Fund. On February 23, 1968 plaintiff filed a petition for compensation under workmen's compensation statute, which petition was granted on August 21, 1968.

Only one issue of fact remains to be decided: whether plaintiff's resignation was voluntary or involuntary. Therefore, the Court must determine whether the resolution of this issue is crucial to the decision of this case.

In defense of their action, defendants contend that since the plaintiff has already received an award under the Delaware Workman's Compensation Law, he is no longer entitled to receive a disability pension from the City of Wilmington. DeLorenzo v. Board of Com'rs., 134 N.J.L. 7, 45 A.2d 686. I do not read the *DeLorenzo* case as authority for that position. That case involved the award by a workmen's compensation board of a weekly amount for total disability "until the further order of the court." The court in *DeLorenzo* merely held that so long as the plaintiff continued to receive workmen's compensation benefits, thus maintaining an employer-employee relationship, he could not also receive disability pension benefits which would imply a severance of the employer-employee relationship.

■ Generally, it has been held that in the absence of statute directing otherwise, the receipt of a disability pension or the receipt of a workmen's compensation award are independent events which have no effect on an employee's right to receive other compensation. Holt v. Board of Police and Fire Pension Commissioners, 86 Cal.App.2d 714, 196 P.2d 94 (1948); Tyra v. Board of Police and Fire Pension Com'rs., 71 Cal.App.2d 50, 162 P.2d 35; Luellen v. Aberdeen, 20 Wash.2d 594, 148 P.2d 849; 3 McQuillin, Municipal Corporations § 12.158 (Third Ed. Rev.).

The ordinance governing policemen's pensions, I Wilmington City Code § 20–7,[1] is silent as to the effect of workmen's compensation awards on the right to a pension. By itself, the absence of any statutory direction would seem to indicate an intention that there is to be no such effect; however, in I Wilmington City Code, § 20–8, governing widow's benefits, there is express provision that any amounts received through a workmen's compensation award are to be set off against the amounts due under that section. Consequently, the legislature's failure to make similar provisions with regard to section 20–7 is even more clearly indicative of legislative intent that the receipt of one type of benefit does not bar receipt of the other. I thus decline to follow the rule announced in *DeLorenzo*. A decision either to force State employees to choose between their workmen's compensation and pension benefits, or to offset those benefits against each other should be legislatively and not judicially made.

■ Of what relevance, then, is the voluntary or involuntary character of the plaintiff's resignation? Although I can find no Delaware authority that deals with this point, it seems clear that if the plaintiff's termination of employment was involuntarily procured, there has been no forfeiture of his pension rights. Board of Trustees of Policemen's Pension Fund v. Starasinich, 128 Colo. 556, 264 P.2d 1033; State ex rel. Johnson v. Funkhouser, 52 Wash.2d 370, 325 P.2d 297. This is so despite some cases which hold to the contrary, which I decline to follow, e. g., State

ex rel. Weber v. Board of Trustees of Policemen's Pension Fund, 123 Wis. 245, 101 N.W. 373. To rule otherwise would allow the abrogation of valuable pension rights by simply discharging an injured policeman or by obtaining his involuntary resignation before he had an opportunity to apply for a disability pension.

If the plaintiff's resignation was voluntarily given, a more difficult problem is posed. Initially, defendants contend that since section 20–7 of the Wilmington Code speaks only in terms of the application by members of the Department for retirement, the Trustees of the Police Pension Fund were without authority to consider plaintiff's application.

Section 20–7 of the Wilmington Code establishes a procedure for granting disability pension where a member of the Department files an application for retirement on a disability pension. The Trustees of the pension fund then consider the application, along with the opinions of three doctors who have examined the applicant, and either grant or deny the application. If the application is granted, the applicant is placed on a retirement list with a pension, subject to re-examination of the applicant and recall to duty under I Wilmington City Code § 20–11 upon cessation of the disability.

■ The ordinance does not by its terms preclude the application of one not a member of the Department, and should not be so construed as that construction would prevent the application of an employee who

---

1. The pertinent text of I Wilmington City Code § 20–7 is:

"Whenever a member of the bureau of police of the department of public safety of the city shall have become disabled or incapacitated from injuries received while in the active performance of official duty and whenever any member of such bureau, who has performed faithful service as such member for a period of not less than fifteen years shall have become permanently incapacitated from performing such regular active duty, he may be retired by the public safety commissioner from the regu-

lar active service and placed upon the retired list and all members of the bureau who shall have performed faithful service as such member for a period of at least twenty years shall, upon their own application, be placed upon the retired list, whether they are disabled or not. Each person so retiring shall be entitled to receive from the sum established by this division an amount equal to one-half of the amount of his salary at the time of retirement, plus two per cent of such retiring salary . . . "

has been wrongfully discharged subsequent to a work-related injury. The little Delaware authority in this area makes clear that pension statutes or ordinances are to be liberally construed. State ex rel. Murray v. Riley, 5 Terry 505, 511, 62 A.2d 236, 239; Miller v. City of Wilmington, Del.Ch., 267 A.2d 477. See also, State ex rel. Mulrine v. Dorsey, Del.Supr., 272 A.2d 709. I hold that plaintiff's lack of membership in the Department is not a bar to the consideration of his application by the Trustees of the pension fund. Neither is it a bar to his entitlement to a pension.

A primary purpose of the statute is to provide compensation to police officers for permanent disabilities which they receive in the course of their official duties. The right to a pension does not, therefore, depend on the applicant's status when applying, but rather on fulfillment of the statutory requirements for eligibility. Since defendants concede that plaintiff was injured in the performance of his duties as a policeman and that his injuries have resulted in permanent, partial disability, plaintiff, absent a waiver of his rights, was entitled, upon application therefor, to receive a police disability pension.

■ Defendants contend, however, that plaintiff has waived his right to a pension since he voluntarily resigned from the police force; they argue that any reservation of rights would have to be expressly made. Defendants' argument fails to consider the liberal rules of construction established by the courts of this state in construing pension statutes. Because of the remedial purpose of such statutes, because of the fact that they authorize pensions to prospective policemen as an inducement to their employment and because the pensions are financed by contributions from the proposed pensioners themselves, a forfeiture or waiver of pension rights should be found only where clearly intended by the parties. There is no clear expression of such waiver here, the plaintiff being unaware at the time of his resignation that he had any right to a pension. I conclude that no waiver was intended and I therefore decline to find that plaintiff has waived his right to a pension.

■ Defendants' final contention is that since plaintiff voluntarily resigned from the police force, he has prevented the operation of I Wilmington City Code § 20–11 [1] which provides for the re-examination at any time of persons on the retired list due to disability and for reassignment to duty if the disability is found to have ceased. They maintain that since the City of Wilmington is unable to recall the plaintiff to duty should his disability cease, they have no obligation to pay the plaintiff a pension. Defendants' obligation to pay the plaintiff a pension is not conditioned on their right to recall him to service, but rather on his continued disability from injuries sustained in the course of his police duties. It is clear that the primary purpose of Section 20–11 is to allow the Trustees of the pension fund to ascertain whether a policeman retired on a disability pension has continued to be disabled, not to obligate retired policemen. The provisions providing for reinstatement to duty are for the benefit of the employee should his disability cease, not for the protection of the City. Holt v. Board of Police and Fire Pension Com'rs., supra.

To satisfy the trustee's practical need to know the physical condition of the plaintiff,

1. I Wilmington City Code § 20–11 provides:

"The public safety commissioner may at any time require any officer on the retired list, except those retired by reason of having served twenty-five years, to be re-examined by the surgeon of the police bureau or some other competent physician authorized by such commissioner to act in the premises, and if on such re-examination such officer is reported capable of performing regular duty, he may be required by the public safety commissioner to return to regular duty in the same rank and grade in which he was serving at the time of his retirement."

provision might be made for payment of a pension subject to re-examination of the pensioner at the request of the Trustees of the pension fund. However, in this case, defendants have conceded that plaintiff was injured in the course of his employment and that the injuries sustained caused *permanent* disability. Thus, there is no need for future re-examination to determine whether the disability exists.

I conclude that regardless of whether plaintiff voluntarily or involuntarily resigned, he is entitled to receive a disability pension from the defendants. Such pension is to be payable retroactive to the date of plaintiff's application, since it was on that date that plaintiff fulfilled the statutory requirements for granting the pension. An appropriate order may be submitted on notice.