**CITY OF WILMINGTON and Norman E. Levine, as Commissioner of the Department of Public Safety, Defendants Below, Appellants,**

v.

**Arnold L. WILLIAMS, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 17, 1979.

Decided Feb. 28, 1979.

---

Charles H. Toliver, IV, Asst. City Sol., Wilmington, for defendants-appellants.

James R. Leonard, of Potter & Carmine, P. A., Wilmington, for plaintiff-appellee.

Before HERRMANN, C. J., and DUFFY and QUILLEN, JJ.

DUFFY, Justice:

In this action, Arnold L. Williams (plaintiff), a member of the Wilmington City Police Force, was granted a pension in April 1973 on the basis of a twenty percent permanent partial disability of his lower back. See 1 *Wilm.C.* § 20–8. The injury had been sustained while he was on active duty. Since March 1975, plaintiff has been employed by the State as a court bailiff. In November 1976, the City ordered Williams to report for a medical examination to determine whether he was physically able to return to active duty with the Police Force. See 1 *Wilm.C.* § 20–12.[1]

After being so ordered, Williams filed an action to enjoin the City from requiring him to submit to the examination and, relying on *Miller v. City of Wilmington,* Del.Ch., 285 A.2d 443 (1971), aff'd Del.Supr., 293 A.2d 574 (1972), the Court of Chancery granted the injunction.

In *Miller,* the Court of Chancery considered a claim for a disability pension made by a former City policeman who had been injured while on active duty and sustained a permanent partial disability. After the injury, but before the officer became aware of permanent disability, he resigned from the Force in the face of criminal charges pending against him. When the charges were dropped, the officer applied for reinstatement, but his application was denied. He thereafter applied for a disability pension, but the petition was ignored by the Trustees of the Police Pension Fund. The officer applied for and received compensation under the Workmen's Compensation Act and then sued in Chancery for a declaration of entitlement to a pension.

The City made several contentions challenging the policeman's claim to a pension, but the Vice Chancellor rejected each of them, ruling that (1) applying for and accepting Workmen's Compensation benefits did not preclude the policeman from receiving a disability pension; (2) the officer did not waive his right to a pension when he resigned; and (3) the officer's resignation, which prevented invocation by the City of § 20–11 of the Code [now § 20–12] which would require him to undergo a physical examination, did not preclude him from receiving a disability pension, because he was not a member of the Force, was permanent-

---

1. 1 *Wilm.C.* § 20–12 provides:

"The public safety commissioner may at any time require any officer on the retired list, except those retired by reason of having served twenty-five years, to be re-examined by the surgeon of the police bureau or some other competent physician authorized by such commissioner to act in the premises, and if on such re-examination such officer is reported capable of performing regular duty, he may be required by the public safety commissioner to return to regular duty in the same rank and grade in which he was serving at the time of his retirement."

ly disabled, and was thus ineligible for reinstatement.

The *Miller* case is clearly distinguishable on its facts. Although there is language in that opinion construing the reinstatement provision of the Code as being for the benefit of the employee and not for the City within the factual context of *Miller,* the Court there stated:

> "It is clear that the primary purpose of Section . . . [20–12] is to allow the Trustees of the pension fund to ascertain whether a policeman retired on a disability pension has continued to be disabled . . . ."

285 *A.2d* at 446. This provision did not apply in *Miller* because in that case the applicant's reexamination was not sought by the City. But it does apply in the case at bar.

This Court agreed with the Vice Chancellor's reasoning and conclusions in *Miller,* and affirmed the judgment in a brief *per curiam* opinion. 293 *A.2d* 574. Our approval, of course, was limited to the specific context of that case; and we hereby abandon, as a general proposition, the language of *Miller* that the "provisions for reinstatement to duty are for the benefit of the employee should his disability cease, not for the protection of the City." 285 *A.2d* at 446.

[redacted] We think that the Court of Chancery anticipated too much in applying *Miller* to this case. Here, the only issue before the Court is whether Williams should be required to submit to a physical examination.[2] And, as to that, the Code clearly and explicitly permits reexamination of a policeman, who is retired on a disability, at any time required by the Public Safety Commissioner.[3] We have no doubt that, to that extent at least, the Code provision is for the benefit of the City. The restoration-to-active duty requirements may, of course, be for the benefit of the policeman, as well as for the City.

We determine only that the City is entitled to have § 20–12 of the Code enforced and to require Williams to submit to the examination. We make no judgment anticipating the consequence of that examination. It may be determined that Williams' disability continues and he is unable to return to the duties of a police officer; in that event, presumably, the issues between the parties will be moot. On the other hand, after the physical examination is completed, the City may attempt to order Williams to return to duty and such an order may raise issues not before us at this time. We do not reach such issues, nor do we decide how any order requiring Williams to return to duty would relate to the prior determination that he had sustained permanent partial disability which led to his retirement.

* * * * * *

Reversed.

[redacted]

2. In *Miller,* the Court found that there was no need for the City to have the officer reexamined because it had conceded that he was disabled. The City has not made such a concession in this case.

3. The Code provisions permitting reexamination of a disabled police officer are not unique. See, for example, *Maryland Stat. Ann.* Art. 88B, § 53(3) and (5); *New Jersey Rev.Stat.* Tit. 43, § 16A–8 (1971); *New York Retirement and Social Security Law* § 402 (McKinney, 1967); 53 *Pa.Stat.Ann.* Ch. 8A, § 881.313 (1974).