## The People of the State of Illinois ex rel. Charles J. O'Connor, Plaintiff in Error, v. George F. Harding, Comptroller, et al., Defendants in Error.

### Gen. No. 26,271.

1. OFFICERS—*what essential to a complete and operative resignation from public employment.* To constitute a complete and operative resignation from a public employment, there must be an intention to relinquish a part of the term, accompanied by the act of relinquishment.

2. CIVIL SERVICE—*when resignation not given of own free will.* A written resignation by a public employee in the civil service, filed as an alternative to having charges made against him before the Civil Service Commission, cannot be said to have been given by the party of his own free will.

3. MASTER AND SERVANT—*when illness is sufficient cause for employee's remaining away from duty.* Illness which is of so serious a character as to render a person unable to perform the duties of his employment constitutes a sufficient cause for his remaining away from duty during the continuance of such illness.

4. CIVIL SERVICE—*when employee entitled to mandamus to compel restoration to employment.* A public officer was not justified in treating a resignation, filed by a civil service employee to take effect immediately upon his failure to report for work at any time, as absolute and accepting it nearly 3 years thereafter upon such employee being absent as a result of serious illness, where such resignation was signed as an alternative to having charges preferred against him before the Civil Service Commission with an understanding that it would be accepted in case he absented himself from work without good excuse, nor should the Civil Service Commission have approved such action, and such employee was entitled to a writ of mandamus to compel his restoration to his employment.

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed and remanded with directions. Opinion filed January 17, 1922.

FRANKLIN RABER and WILLIAM J. McGAH, for plaintiff in error.

SAMUEL A. ETTELSON, for defendants in error; GILBERT G. OGDEN, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

July 22, 1919, plaintiff in error filed a petition for a writ of mandamus against George F. Harding, Comptroller of the City of Chicago, Percy B. Coffin and Joseph P. Geary, members of the Civil Service Commission of the City of Chicago, commanding that the said Harding restore the relator to the position or place of employment of chief clerk in the office of said comptroller and place relator's name on the pay roll of said office, and that the comptroller pay or cause to be paid to relator, the salary appropriated therefor from May 15, 1919, to the date of his restoration at the rate of $3,800 per year; and further commanding the said Civil Service Commissioners to expunge from their records the report of the resignation of the relator and the order of the commission approving the same, and that the commission certify on the pay roll of the comptroller's office the name of relator as being lawfully entitled to hold the said position of chief clerk in said office. Thereafter an amendment to the original petition was filed striking out so much of the prayer for relief as sought the payment of the salary appropriated for chief clerk in the comptroller's office between the time of relator's removal and his reinstatement. An answer was filed on behalf of the respondent, a replication thereto and a rejoinder to said replication.

The pleadings in the case are voluminous and no attempt will be made to set forth their allegations in detail. These pleadings by their allegations and admissions show that the City of Chicago on July 1, 1895, adopted the provisions of an act of the legislature entitled, "An Act to Regulate the Civil Service of Cities," and that since its said adoption the city has been conducting its business in conformity therewith; that relator was duly appointed to the office or place of employment of chief clerk in said comptrol-

ler's office on January 21, 1903, after examination, in accordance with the provisions of said act and the rules of the Civil Service Commission; that said office or position is within the classified service of the City of Chicago and subject to the provisions of said act and said rules relating to the appointment thereto and removal therefrom; that section 12 of said Act (Cahill's Ill. St. ch. 24, ¶ 697) prohibits the discharge or removal of an employee appointed after an examination except for cause, and then only upon written charges and after an opportunity to be heard in his own defense, which charges must be investigated by or before the said Civil Service Commission; that no charges were ever filed against the relator; that relator was not discharged or removed as a result of any such investigation and that the relator drew the salary appropriated for the office until January 9, 1919.

It also appears from the pleadings that on July 5, 1916, relator delivered to the city comptroller a letter signed by him in which he tendered his resignation as such chief clerk "to take effect immediately upon my failure to report for work at any time." This letter was held by the comptroller until January 10, 1919, without any action being taken under it. On that date, it is alleged by respondents that the comptroller accepted the said resignation and delivered to the Civil Service Commission a report thereof. The resignation was approved by the Civil Service Commission on January 14, 1919, and on January 17, 1919, the comptroller wrote to the relator to the effect that his resignation of July 5, 1916, had been accepted and would take effect as of January 10, 1919, and requesting relator to turn over to the comptroller all keys and other property in his possession belonging to the City of Chicago. This resignation is relied upon by the respondents as a defense in this case and they contend that upon the acceptance of said resignation the relator had no further right to the position.

The answer of the respondents specifically denies all allegations of the petition relating to the various steps taken by the relator after the receipt by him of the comptroller's letter of January 17, 1919. The replication denies that relator had any intention of resigning or relinquishing his position on July 5, 1916, or at any time thereafter, and alleges that the purported resignation was obtained by the comptroller by duress and coercion under threat of suspension of relator from his position and the filing of charges against him with the Civil Service Commission. He further alleges in his replication that it was agreed between him and the comptroller on July 5, 1916, that the said resignation would not be accepted by the comptroller except in the event that the relator should thereafter absent himself from duty without good and sufficient cause; that on January 2, 1919, the relator was seriously ill, confined to his bed and under the care of a physician and therefore unable to report for duty at the city hall; that on the last-mentioned date he notified the comptroller's office in accordance with the practice then obtaining in said office of the fact of his illness and his inability to report for duty; that said illness continued until about May 15, 1919, when he returned to the office to report for duty; that the comptroller led him to believe that he would be restored to his office and that relying upon these promises he delayed until July 7, 1919, before making a formal demand for restoration. These averments of the replication are denied in the rejoinder of respondents.

The issue raised by the pleadings is whether or not the comptroller was justified under the circumstances shown by the evidence in treating the letter of July 5, 1916, as an absolute resignation and warranted in the acceptance of said resignation on January 10, 1919. Plaintiff in error contends that on July 5, 1916, the relator did not intend to resign or relinquish his office

as chief clerk; that the purported resignation of that date was obtained by duress or coercion and was delivered to the comptroller upon the understanding and agreement that the same would be accepted only upon condition that relator. should thereafter absent himself from duty without good and sufficient cause; that the relator was absent from his duties from January 2, 1919, until May 15, 1919, on account of illness, which was reported to the comptroller on January 2, 1919, and that ever since May 15, 1919, until the filing of the petition herein, the relator was endeavoring to obtain the restoration of his position and was led to believe that he would be restored. Defendant in error relies solely upon the resignation of July 5, 1916, and the findings of fact by the trial court, which, it is alleged, dispose of the case so far as the terms of the resignation, the question of duress, the illness of the relator and his reporting for duty are concerned. The evidence upon these questions was not conflicting to any serious extent. The findings of the trial court as to questions of fact are not conclusive upon this court. (*Segal v. Chicago City Ry. Co.*, 216 Ill. App. 17.)

The testimony of the comptroller shows that prior to July 5, 1916, the relator had been absent from his duties at various times and that the comptroller upon investigating the cause of such absences had reached the conclusion that they were without sufficient cause; that thereupon he called upon the relator for an explanation and suggested to him that it was the duty of the comptroller to file charges with the Civil Service Commission for the purpose of having relator dismissed from the service. After some further conversation the comptroller suggested that if relator would write out his resignation to take effect *when he misbehaved again,* he would be allowed to continue to work. In accordance with this suggestion the resignation of July 5, 1916, was signed by the relator and delivered to the comptroller. This testimony, so far

as it relates to the condition contained in the letter of resignation, seems to be in accordance with the relator's contention to the effect that the resignation was to take effect in case of future misbehavior rather than in case of a "failure to report for work at any time." The uncontradicted testimony of a number of witnesses, including the physician who treated relator, shows that relator became ill on January 2, 1919, to such an extent that he was unable to report for duty on that date and so reported to the comptroller's office in accordance with a well-established custom applicable to such cases. It had been the rule and practice for employees who were prevented by illness from reporting for duty to notify the office prior to 9:30 a. m. of the day when such incapacity commenced. The relator complied with this rule. He was confined to his house until January 9, 1919, on which date his attending physician took him to the Garfield Park Hospital for treatment. He remained in the hospital until January 13, 1919. Upon his return from the hospital he was confined to his bed until January 20, 1919. Thereafter, until February 4, 1919, he was confined to his residence and unable to return to work. From February 4, 1919, until February 14, 1919, he was again under treatment at the hospital and after his return to his home he was confined to his bed. He was under the care of his physician until about the middle of May, 1919. On January 21, 1919, he had an interview with the comptroller. This was after the notice from the comptroller contained in letter of January 17, 1919. The conversation took place in the comptroller's office. Relator came to the office in a taxicab. His physical condition was bad. He had lost about 38 pounds in weight and was unable to work at that time. The interview was brief. In the course of it relator referred to the notice which he had received of the acceptance by the comptroller of the resignation of July 5, 1916, and stated that he had not intended to

resign at that time. He saw the comptroller again on February 22, 1919. When he came to the city hall on that date his feet were so swollen that he could not put on his shoes and was obliged to wear slippers. The comptroller observed his condition and inquired as to relator's state of health. Relator was finally able to report for duty to the comptroller about the middle of May. From that time until the time of the filing of the petition, relator was unremitting in his efforts to obtain a restoration to his office. It appears that during the course of his illness the comptroller had sent different emissaries to relator's residence for the purpose of ascertaining whether or not the relator was really ill or only shamming illness. One of these emissaries testified that he and his companion, a Mr. Foot, went to relator's residence in January, 1919, and found him ill and confined to the bed. He called several times thereafter and called on relator several times at the Garfield Park Hospital. These men reported to the comptroller that relator was confined to his bed and appeared to be sick.

The testimony of Mr. Pike, who was the comptroller in July, 1916, indicates that relator signed the resignation in preference to having the comptroller file charges against him before the Civil Service Commission and that the delivery of the resignation was due to the suggestion of the comptroller that it was to be made effective in case of misbehavior only. It seems unreasonable to suppose that either of the parties to the transaction could have intended or expected that a resignation should become effective, in case of absence on account of the serious illness of relator. Relator was given the alternative of signing this resignation or having charges filed against him. The filing of such charges, whether sustained or not, would have subjected him to serious embarrassment, inconvenience and expense. A resignation under such circumstances cannot be said to have been given by the party

resigning of his own free will. Such a resignation might have been repudiated at any time. In order to constitute a complete and operative resignation there must be an intention to relinquish a part of the term, accompanied by the act of relinquishment. *Biddle v. Willard*, 10 Ind. 62; *State v. Ladeen*, 104 Minn. 255; *People v. Voorhis*, 66 Hun (N. Y.) 88.

It is well settled that illness which is of so serious a character as to render a person unable to perform the duties of his employment constitutes a sufficient cause for remaining away from duty during the continuance of such illness. There is an implied condition attached to every agreement for employment that performance shall be excused in case the person, who alone is competent to perform, is prevented from so doing by illness. 3 Williston on Contracts, sec. 1940; 6 R. C. L., page 1011; *Caden v. Farwell*, 98 Mass. 137; *Scully v. Kirkpatrick*, 79 Pa. St. 324.

In view of the undisputed facts in this case, we conclude that the comptroller was not justified in treating the resignation of July 5, 1916, as absolute and accepting it on January 10, 1919, and that the Civil Service Commission should not have approved the action of the comptroller in so doing. It is admitted that the employment of relator was subject to the provisions of the Civil Service Act and the rules of the Civil Service Commission. He was not removed from his office in conformity with either act or rules. If his conduct was such as to merit his removal from his office or place of employment, the procedure should have been taken in conformity with the provisions of said act and said rules.

The judgment of the circuit court is reversed and the case remanded to the circuit court with directions to award the writ as prayed in the amended petition.

*Reversed and remanded with directions.*

GRIDLEY, P. J., and BARNES, J., concur.