(No. 49850.-

THE CITY OF CHICAGO *ex rel.* ANTHONY ROBERT MARTIN-TRIGONA, Appellant, v. PATRICK O'MALLEY *et al.,* Appellees.

*Opinion filed January 20, 1978.*

Anthony Robert Martin-Trigona, of Chicago, *pro se*.

Don H. Reuben, James C. Munson, and John T. Hickey, Jr., of Chicago (Kirkland & Ellis, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff filed suit against the Regional Transportation Authority (hereafter referred to as RTA) and one of its nine directors, Patrick O'Malley, for a declaratory judgment and injunctive relief, alleging that O'Malley's actions at a June 24, 1977, board meeting constituted a valid resignation. Plaintiff argues that since O'Malley had effectively resigned on June 24, 1977, his votes in favor of two fuel tax ordinances on June 30, 1977, were invalid.

Absent O'Malley's votes, the ordinances would not have passed with the required two-thirds majority. Thus, if he had validly resigned, the fuel taxes are illegal. Plaintiff's motion for summary judgment was denied, and the trial court granted summary judgment to the defendants. The defendants' motion for summary judgment was supported by a detailed affidavit of O'Malley and Edward Wolf, Jr., an employee of the RTA. These affidavits incorporated O'Malley's letter of resignation, Chicago Mayor Bilandic's reply, a copy of the transcript of relevant meetings of the RTA, and in detail other pertinent factual material. In order to expedite consideration of the validity of the taxes, we allowed a direct appeal under Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)).

At the time in question, Patrick O'Malley was one of nine directors of the RTA. He was one of the four directors who had been appointed by the mayor of Chicago with city council approval, having held his office since November 26, 1975. (See Ill. Rev. Stat. 1975, ch. 111 2/3, par. 703.01.) On June 24, 1977, O'Malley attended a board meeting of the RTA to consider the proposed 1978 fiscal year budget. After discussion of the budget, O'Malley made the following statement to the board:

"It is quite obvious we have failed to meet the mandate of the RTA enabling legislation. We have spent the better part of a year trying to maneuver it around to meet our own desires and requirements.

They gave us the authority to pass a five percent tax. We tried to change that, we tried to go in and get a sales tax. Instead of it, they gave us the authority to do a whole host of other things which we failed to do as members of the RTA.

We have failed to provide what I consider a cohesive transit system. We have allowed ourselves to become referential and not be regional as a whole.

We have failed to meet the responsibility as a Board. We have demoralized the staff by continued interruptions

of their work. We have usurped the authority of management in their job to run this staff and to run the RTA.

We have failed in so many areas that I think we all ought to do what I am going to do right now. We ought to all return to the Government that appointed us and tender to them our resignation.

Thank you very much, it's been nice to be with you, and that's what I intend to do at this moment."

At that point, O'Malley left the meeting. No comment was made about his statement or his departure, although he was listed as absent on a vote later in the meeting. On the same day, he wrote and delivered the following letter to the office of Chicago Mayor Bilandic:

"June 24, 1977

The Honorable Michael A. Bilandic
Mayor of Chicago
507 City Hall
Chicago, Illinois 60602

Dear Mr. Mayor:

With sincere regret, but hopefully with understanding on your part, I today tender my resignation as a Director of the Regional Transportation Authority effective at your convenience.

Sincerely yours,
/s/ PATRICK L. O'MALLEY"

On June 29, 1977, the RTA board reconvened for further consideration of the budget. During the roll call, Director Nicholas Bosen stated that O'Malley was absent, being in Los Angeles on business, but would be present the following day. In the course of the meeting, Director Jerry Boose noted that there was a question as to O'Malley's status:

"Apparently there is some real question of whether Mr. O'Malley is any more a director of this organization. Somebody is apparently going to file a lawsuit."

Director Bosen then noted that even if O'Malley had resigned, he would still serve as a director until a successor was appointed.

At 3 p.m. on Thursday, June 30, 1977, a special meeting of the RTA board was called. O'Malley attended and read and voted on a proposed ordinance for RTA loan agreements. During this special meeting, Director Gene Leonard disclosed that, due to certain press releases, he had requested the RTA general counsel to give an opinion as to O'Malley's status. Mr. Jeremiah Marsh, general counsel, provided a written opinion and orally summarized it for the board, concluding that O'Malley had not effectively resigned. After further business, the special meeting was adjourned. At 3:30 p.m. on the same day, the board reconvened the meeting of June 29 and O'Malley presented the proposals for the two fuel tax ordinances here in question. After discussion, they were adopted by two separate votes of six to one with two absent, O'Malley voting in favor of the ordinances. Both received the required two-thirds majority required by statute (Ill. Rev. Stat. 1975, ch. 111 2/3, pars. 704.03(a), (b), (c)). O'Malley also voted on several other ordinances which were approved, including the 1978 fiscal budget.

On July 11, 1977, O'Malley also attended and participated in an RTA briefing session. On July 12, 1977, the plaintiff filed the instant complaint against O'Malley and the RTA in the circuit court of Kane County. On July 13, 1977, Mayor Bilandic told O'Malley that he would not accept O'Malley's resignation and asked him to stay on as director. O'Malley assented, and on July 14, 1977, Mayor Bilandic sent him the following letter:

"July 14, 1977

Mr. Patrick L. O'Malley
Merchandise Mart
Chicago, Illinois

Dear Mr. O'Malley:

I am in receipt of your letter of June 24, 1977.

I have found your service, as a Director of the Regional Transportation Authority because of your vast abilities, to have been a great contribution to the Authority and to all of the people in the area served by the Authority. The Authority greatly needs the type of service such as you have provided, in both an unselfish and constructive manner.

I, therefore, reject your tendered resignation of June 24 and ask you to continue to serve as a Director of the Regional Transportation Authority.

Sincerely,
/s/ Michael A. Bilandic
Mayor"

On July 14, 1977, O'Malley attended and participated in another RTA board meeting. On July 19, 1977, he received a check for per diem director's compensation through July 14, 1977.

The controlling issue raised by the plaintiff is whether O'Malley had validly resigned on June 24, 1977, so that his vote in favor of the fuel tax ordinances was invalid. If he had effectively resigned prior to June 30, 1977, his vote was a nullity and the fuel tax ordinances did not pass by the required two-thirds majority vote and are thus illegal.

Plaintiff contends that O'Malley could and did effectively resign from the RTA board by his actions and statement to the board during the meeting on June 24, 1977. He contends that O'Malley's letter of resignation to Mayor Bilandic was merely a sham and argues that O'Malley should be estopped from denying that his actions on June 24 amounted to a resignation. Defendants argue that O'Malley could not effect his resignation by actions directed to the RTA board, but could only resign by tendering his resignation to the mayor of Chicago, since the mayor is the person authorized to appoint a successor.

They contend that O'Malley's statement to the board merely indicated his intent to resign and that his letter to Mayor Bilandic was only a tender of resignation, to take effect only upon acceptance by the mayor. Since the resignation was not accepted but was rejected, they argue it never became effective. Thus, O'Malley's votes in favor of the fuel tax ordinances were valid. We will consider O'Malley's actions as to the RTA board and the mayor separately.

Generally, an effective resignation of a public officer requires an intention to relinquish a part of the term accompanied by an act of relinquishment. (*People ex rel. O'Connor v. Harding* (1922), 224 Ill. App. 198, 205; see 67 C.J.S. *Officers* sec. 55 (1950).) Plaintiff argues that when O'Malley made his statement to the RTA board on June 24, 1977, he actually resigned from the RTA board. We disagree for several reasons. First, O'Malley's statement clearly discloses that it was not an act of relinquishment or tender of resignation to the board. It expressly indicates his intent to tender a resignation *in futuro*. The relevant portions indicate this fact:

"[W]e all ought to do what I am going to do right now. We ought to all return to the Government that appointed us and tender to them our resignation.
[T]hat's what I intend to do at this moment."

The language used in O'Malley's statement clearly shows that he was only announcing his intention to tender his resignation. His specific reference to "return to the Government that appointed us and *tender* to them our resignation" obviously indicates that he was not tendering his resignation to the board, but was going to tender it to his appointing authority, the mayor of Chicago.

In view of the absence of an expression of intention to relinquish his position and an act of relinquishment, O'Malley's statement to the board was not a resignation; it only served to give the board notice of his intention to

resign in the future.

O'Malley's letter to Mayor Bilandic, on the other hand, is a clear tender of resignation. We note, however, that by its express terms the letter is a tender of resignation effective at the mayor's convenience. This is tantamount to an offer of resignation, effective only upon acceptance. We note that the various States are in conflict as to whether an ordinary resignation requires acceptance to be effective. (See Annot., 82 A.L.R.2d 750 (1962).) Previous cases in Illinois dealing with elected officials have held that a resignation effective at a future date is final and may not be withdrawn once it is received by the officer authorized to fill the vacancy. (*Allen v. Powell* (1969), 42 Ill. 2d 66; *People ex rel. Adamowski v. Kerner* (1960), 19 Ill. 2d 506.) *People ex rel. Adamowski v. Kerner,* however, indicates that acceptance of a resignation is not necessary for its validity; once it is received, it is effective immediately (if unqualified) or upon the date specified (if a future date is named) and may not be withdrawn:

> "[P]ublic policy requires that there be certainty as to who are and who are not public officers. Otherwise, there is doubt and confusion which leads to needless litigation. Therefore, the resignation of an officer effective either forthwith or at a future date may not be withdrawn after such resignation is received by or filed with the officer authorized by law to fill such vacancy or to call an election for such purpose. Cf.: *People ex rel. McCarthy v. Barrett,* 365 Ill. 73; *Pace v. People ex rel. McMeen,* 50 Ill. 432.
>
> In the event the rights of creditors or public convenience require that there should be no vacancy in the office from which the incumbent seeks to resign, then affirmative action is required of the officer receiving the resignation in order to preclude it from becoming effective. Absent such

> affirmative action, the resignation becomes effective either forthwith or upon the future date specified therein, as the case may be, when received by or filed with such officer, and it cannot be withdrawn." 19 Ill. 2d 506, 512.

However, this rule is not applicable to the case at bar. This is not a situation where the resignation is unconditional, to take effect immediately or at a future date. It is a *conditional* resignation which *requires* acceptance before it becomes effective. The clear language of the letter of resignation "effective at your convenience" is an indication that the resignation is not to be effective immediately. It required some act of acceptance by the mayor to make it viable. 67 C.J.S. *Officers* sec. 55 (1950); *cf. Eurich v. Korean Foundation, Inc.* (1961), 31 Ill. App. 2d 474, 486.

In this case, there was clearly no acceptance of the resignation by the mayor by June 30, or at any time. The only action taken by the mayor was a rejection of the tendered resignation as evidenced by his letter of July 14, 1977. Absent any acceptance, the tendered resignation never became effective and, thus, O'Malley at all times retained the rights and powers of an RTA director, including the right to vote on the fuel tax ordinances here in question. We therefore affirm the judgment of the circuit court of Kane County.

*Judgment affirmed.*