NORVELL GLENN STEARNS, Plaintiff-Appellant, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF CARBONDALE, Defendant-Appellee.

Fifth District   No. 77-32

Opinion filed April 5, 1978.

Brocton Lockwood, of Carbondale, for appellant.

John Womick, City Attorney, of Carbondale, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal by Norvell Glenn Stearns from the judgment of the Circuit Court of Jackson County dismissing his complaint for administrative review of a decision of the Board of Fire and Police Commissioners of the City of Carbondale upholding his dismissal as a fireman by the Carbondale city manager. At the hearing before the Board, appellant argued that he was denied due process of law by the city manager's failure to give him notice and an opportunity to be heard before his dismissal from the fire department. The circuit court, however, did not reach the due process issues raised, finding that appellant had resigned before his purported dismissal. On appeal, the only issue presented is whether the court erred in this determination.

■■  The city of Carbondale is subject to the provisions of division 2.1 of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—1 *et seq.*) which provides for a board of police and fire commissioners. The city also operates under the managerial form of government provided for in article 5 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 5—1—1 *et seq.*). Ordinance 73-94 of the city gave the city manager the power to discharge members of the fire department for cause upon written charges and hearing, presumably under the authority of section 5—3—7 of article 5 of the Code, subject, however, to review by the Board of Police and Fire Commissioners of the city upon request of an aggrieved party. The parties have characterized this review as a hearing *de novo*. The propriety of this procedure has not been questioned. It is settled, however, that the power to discharge policemen and firemen in municipalities operating under a board of fire and police commissioners is under section 10—2.1—17 of the Municipal Code reserved exclusively to the board (*Bovinette v. City of Mascoutah*, 55 Ill. 2d 129, 302 N.E.2d 313 (1973); *People ex rel. Carey v. Forberg*, 33 Ill. App. 3d 161, 337 N.E.2d 369 (1st Dist. 1975).) We, therefore, consider the proceedings before the city manager a nullity. Stearns, however, sought to limit the proceedings before the Board of Fire and Police Commissioners to a review of alleged procedural defects in the hearing before the city manager.

The posture of this case before this court is hopelessly confused and were it not for the decision we reach, we would be compelled to remand for a new hearing on the charges by the Board of Fire and Police Commissioners. We hold, however, that at the time of the hearing before the city manager and the subsequent hearing before the Board of Fire and Police Commissioners, Stearns was no longer an employee of the city of Carbondale as his unqualified resignation submitted to the chief of the fire department of the city terminated his employment.

The sequence of events may be briefly stated. On September 24, 1975, a

fire occurred in the city of Carbondale and subsequently the petitioner-appellant, Norvell Glenn Stearns, was charged with the offense of arson. (He was subsequently acquitted after a trial in the Circuit Court of Jackson County.) On September 25, prior to being so charged, Stearns submitted his resignation to the Carbondale fire chief in letter form as follows: "Chief, due to personal reasons, I wish to make this letter a letter of my official resignation from the employ of the City of Carbondale, Fire Department. I wish this resignation to be effective immediately." The letter was signed by Stearns.

On September 26, a hearing was held before the city manager. No notice of hearing or specification of charges was furnished Stearns, who was informed of the hearing informally by the fire chief. On September 26, subsequent to this hearing, which Stearns did not attend, a letter was mailed to Stearns over the city manager's signature informing him of his discharge from service setting forth as causes his commission of arson, his consumption of alcoholic beverages and causing a disturbance at King's Inn Lounge, all on September 24, 1975. No mention was made of Stearn's resignation. The letter stated this conduct was a violation of the personnel rules of the city and the prescribed standards of morality and ethics required of a member of the fire department, all in violation of ordinance No. 73-94.

Additional confusion occurred at the hearing on "review" before the Board of Fire and Police Commissioners. Stearns attempted to limit the hearing before the Board to a consideration of alleged procedural defects in the proceeding before the city manager, specifically, lack of written specification of charges and want of notice and an opportunity to be heard. By agreement, the burden of proof, at least the burden of proceeding with evidence, was placed on Stearns, and the only matters presented by Stearns at the proceedings before the Board related to these procedural matters. There was no hearing *de novo,* and whatever had occurred on September 26 before the city manager is not a matter of record, except it is clear that no written charges or formal notice of hearing were ever given Stearns.

It is also clear that Stearns resignation was given to the fire chief prior to that hearing and he, in turn, told Stearns that he would keep it until 9 a.m. in the morning of the following day, September 26, in the event he "changed his mind" about resigning. The resignation was not returned but was introduced in evidence at the hearing before the Board and appears as an exhibit to the transcript of proceedings filed in accordance with the Administrative Review Act, although it formed no basis of the Board's decision. The record is silent whether the chief gave the resignation to the city manager on September 26.

■■■ There is no indication in the record that Stearns' resignation was

ever formally accepted of record by the Board or by the city manager. There is no competent evidence that Stearns ever withdrew his resignation. When was Stearns' resignation effective? We hold that this unconditional resignation, submitted to the chief of the fire department, stating that it was "effective immediately," terminated Stearns status as a fireman when it was submitted to the fire chief on September 25. While there appears a stipulation between Stearns and the city that the fire chief would testify that Stearns telephoned him the morning of September 26, and requested that the letter of resignation not "be submitted," we do not believe this is properly before the court. It is not part of the administrative proceedings before the Board of Fire and Police Commissioners. In any event, it would not change our decision as we hold the resignation was effective when submitted to and received by the chief of the fire department.

In *People ex rel. Adamowski v. Kerner*, 19 Ill. 2d 506, 167 N.E.2d 555 (1960), the county judge of Cook County submitted his resignation to the Governor to be effective at midnight, January 31, 1960. On January 29, he attempted to withdraw his resignation. The court held the purported withdrawal ineffective, stating:

"* * * [P]ublic policy requires that there be certainty as to who are and who are not public officers. Otherwise, there is doubt and confusion which leads to needless litigation. Therefore, the resignation of an officer effective either forthwith or at a future date may not be withdrawn after such resignation is received by or filed with the officer authorized by law to fill such vacancy or to call an election for such purpose. [Citations.] 19 Ill. 2d 506, 512, 167 N.E.2d 555, 558.

Admittedly, the Governor was the proper person to receive the resignation under the Election Code (Ill. Rev. Stat. 1959, ch. 46, par. 25— 9); the court further noted that the Election Code did not require acceptance of the resignation, and there was no evidence of acceptance, or any other action by the Governor, prior to the attempted withdrawal.

Here we are concerned with the resignation of a public employee, not a public officer. We have no statutory guideline to assist us in determining the proper person or persons who may receive a resignation. If public policy requires "certainty as to who are and who are not public officers," it likewise requires certainty as to who are and who are not public employees charged with the important responsibility of safeguarding the health and safety of the citizenry from the hazards of fire. This is in accord with the majority rule in this country:

"The resignation of a municipal agent or employee takes effect when delivered to the proper authority, and there has been said to be no need for an acceptance thereof by the employer to give it

effect. A resignation terminates the employment; it constitutes a complete break in the service, and the absolute termination of relations, and thereafter the person resigning has no rights or duties. After resigning, the employee may not complain of an alleged illegal discharge * * *." 62 C.J.S. *Municipal Corporations* §732, at 1502 (1949).

■■ The chief of the fire department was a proper person to receive Stearns' resignation. It is not necessary for us to decide whether he was a proper authority to accept the resignation as the resignation was in fact eventually submitted to the city manager and the Board of Fire and Police Commissioners and according to the holding in *People ex rel. Adamowski v. Kerner* and the majority view, formal acceptance is not required before such a resignation is effective.

In *Bauer v. Saper*, 133 Ill. App. 2d 760, 272 N.E.2d 703 (3d Dist. 1971), a police officer submitted his resignation to the chief of police. There was no evidence of formal acceptance. The court held that a resignation submitted to a proper official to take effect immediately terminates the police officer's employment without the necessity of a formal hearing before the board of fire and police commissioners or any formal evidence of acceptance. This is an agreement with the view we express here.

The judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.