LAWRENCE L. HAHN, Plaintiff-Appellant, v. THE POLICE PENSION
FUND OF THE CITY OF WOODSTOCK *et al.*, Defendants-Appellees.

Second District   No. 84—0814

Opinion filed November 20, 1985.—Rehearing denied December 13, 1985.

John H. Kelly and Thomas F. McGuire, both of Long Grove, for appellant.

Stanley H. Jakala, of Berwyn, for appellees.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, Lawrence L. Hahn, appeals from an order of the circuit court of McHenry County which, on administrative review, affirmed the decisions of the board of trustees of the police pension fund of the city of Woodstock (board) that denied the plaintiff a "not on duty" disability pension under section 3—114.2 of the Illinois Pension Code. Ill. Rev. Stat. 1983, ch. 108½, par. 3—114.2.

Plaintiff raises two assignments of error: (1) that the decision to deny the disability pension was against the manifest weight of the evidence; and (2) that his resignation from the police force did not foreclose his right to a disability pension.

Plaintiff had worked for the Woodstock police department since October 1974. After struggling with marital problems since late 1980, plaintiff voluntarily admitted himself on March 2, 1981, to River Edge Hospital in Forest Park. Marijuana and alcohol use, along with difficulties in relations with his superiors, also contributed to his condition. He was discharged and returned to active duty after five weeks of hospitalization. He was readmitted to the hospital on September 9, 1981, after suffering recurring periods of major depression and discharged himself three days later.

Plaintiff continued his patrolman duties until early 1982, when Police Chief William Patrick suspended him and filed charges against him with the board on the basis of a provision relating to the unlawful use of a weapon. (Ill. Rev. Stat. 1981, ch. 38, par. 24—3.1(a)(5).) That section provides:

> "A person commits the offense of unlawful possession of firearms or firearm ammunition when *** [h]e has been a patient in a mental hospital within the past 5 years and has any firearms or firearm ammunition in his possession ***."

Patrick also charged Hahn with smoking marijuana while he was a member of the police department.

On February 26, 1982, plaintiff applied to the board for a "not on duty" disability pension. (Ill. Rev. Stat. 1981, ch. 108½, par. 3—114.2.) He tendered his resignation to Chief Patrick on March 29,

1982, and therein specifically preserved any rights he had based on the pension application. Hearings on the application began on September 16, 1982, and continued irregularly until June 4, 1983. The board denied plaintiff the pension on July 21, 1983. Holding that it was not against the manifest weight of the evidence, the circuit court affirmed the decision on August 13, 1984. This appeal followed.

Plaintiff first argues that the board's decision was against the manifest weight of the evidence. Eight medical experts testified as to plaintiff's condition after examinations on various dates.

Dr. Ramesh Vemuri, a psychiatrist, examined Hahn during his two periods of hospitalization at the River Edge Hospital and found him extremely depressed due to his pending divorce. However, Vemuri authorized Hahn's return to work after both stays, believing plaintiff had recovered sufficiently to resume his duties as a patrolman.

Psychiatrist James Magnuson testified that he had determined plaintiff to be unfit to perform as a police officer after an examination on March 8, 1982. Citing plaintiff's sleep disorders, fluctuating appetite and reduced ability to concentrate, Magnuson stated that Hahn suffered from major depression and was emotionally disabled. Magnuson also testified he had suggested plaintiff seek psychiatric assistance, which would have eliminated or reduced plaintiff's problem, but Hahn never contacted him about such assistance.

Dr. Donald Sellers, a psychiatrist, examined Hahn on March 8, 1982, and determined Hahn was disabled from performing his duties as a patrolman due to his earlier major depression. Although Hahn appeared very well adjusted, with no evidence of depression or mental illness, and seemed to be recovering at that time, Sellers testified that a return to work would precipitate another attack of depression or anxiety.

Psychiatrist Richard Banta testified that he had examined plaintiff on March 22, 1982, and that, despite his depression and passive-aggressive personality, Hahn had appeared capable of performing police work. He had recommended that Hahn undergo psychiatric therapy and return to work to resolve his depression.

Dr. Samuel Goldman, a psychiatrist, testified that he had examined Hahn on April 13 and 15, 1982, and had considered him unfit to perform the duties of a patrolman. According to Goldman, plaintiff's depressive symptoms and history of excessive drinking influenced his judgment and his emotional stability. Goldman also testified that plaintiff had shown improvement and could be cured by psychotherapy.

Danielle Straub, a psychologist with the Family Services and Community Mental Health Center in McHenry County, counseled

plaintiff weekly from September 20, 1982, through November 5, 1982. She reported that the severity of his depression and negative self-image fluctuated, but he had generally improved during the counseling. At that time, he attended Alcoholics Anonymous meetings almost daily. Straub also testified that Hahn was unfit to perform the stressful duties of a police officer, especially handling situations involving domestic violence.

Donald Shepard, a psychologist commissioned by the board, examined Hahn and gave him a clinical psychology test on November 2, 1982. Shepard testified that plaintiff suffered at that time from alcohol abuse, depression, generalized anxiety, hypersensitivity, passive-aggressive personality disorder and had a dependent personality. Despite these problems, Shepard believed Hahn was capable of performing effectively as a police officer, but warned that heavy stress could exaggerate Hahn's symptoms. He had also recommended plaintiff undergo therapy.

Lastly, psychiatrist Robert Wasson testified that he had examined plaintiff for the board on December 2, 1982, and had found him capable of performing as a police officer, based on psychological tests and a 45-minute interview. Though plaintiff could benefit from continued activity in Alcoholics Anonymous, Wasson felt he did not need any specific psychiatric treatment.

■ On the basis of this testimony, plaintiff asserts that the board's decision is against the manifest weight of the evidence and should thus be overturned. The standards for such a reversal are clear. To make such a finding, a court must conclude that " 'all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous,' [citation] and that the opposite conclusion is clearly evident." (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653, 456 N.E.2d 998.) It is not sufficient that there are "[m]ere conflicts in testimony" (*Altman v. Board of Fire & Police Commissioners* (1982), 110 Ill. App. 3d 282, 284, 442 N.E.2d 305) or that an opposite conclusion might be reasonable (*Knop v. Department of Registration & Education* (1981), 96 Ill. App. 3d 1067, 1076, 421 N.E.2d 1091). Since the weight of the evidence and credibility of the witnesses is within the province of the board (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879), there need only be some competent evidence in the record to support its findings (*Greene v. Board of Election Commissioners* (1983), 112 Ill. App. 3d 862, 871, 445 N.E.2d 1337).

We have reviewed the psychiatric testimony in this case and found

it to be an extremely close question. Eight experts testified as to Hahn's disability. Four psychiatrists stated that he was fit for duty as of the date of the examination, while four recommended he not return to police work at that time. As of the date of his application for a disability pension, Hahn had only been examined by Vemuri. Vemuri certified twice that Hahn was fit for duty, but that was approximately 11 months and 5 months prior to plaintiff's application. Of those four psychiatrists examining him within two months after his application, all but one expert diagnosed Hahn as being incapable of resuming his patrolman duties. An examination by psychologist Straub five months later supported this conclusion, and it was not contradicted until psychiatric examinations were given approximately eight and nine months after Hahn applied for the pension.

■ After reviewing this record, we reverse the board's decision as being against the manifest weight of the evidence. We are guided in this determination by the language of section 3—114.2 of the Pension Code, which provides:

> "Any policeman who becomes disabled as a result of any cause other than the performance of an act of duty, and who is found to be physically or mentally disabled so as to render necessary his suspension or retirement from service in the police department, shall be granted a disability pension of 50% of the salary attached to his rank on the police force at the date of suspension of duty or retirement." (Ill. Rev. Stat. 1981, ch. 108½, par. 3—114.2.)

Inasmuch as this provision requires the amount of disability pension to be determined as of the date of suspension of duty or retirement, it seems apparent that the fact of disability should also be considered as of that time. Thus, the only pertinent evidence of plaintiff's fitness for duty would be those examinations given at or near the time of Hahn's retirement on March 29, 1982. In this case, we will therefore focus only on the testimony of the four psychiatrists who examined plaintiff in March and April, 1982.

Although the fact of plaintiff's history of hospitalization for depression is pertinent to an inquiry into his state of mind in late March 1982, Dr. Vemuri's testimony concerning plaintiff's condition at the termination of those periods of hospitalization is largely irrelevant to our present inquiry due to the span of time between those periods and plaintiff's retirement. We also regard as irrelevant the testimony of the board psychiatrists who examined plaintiff in November and December 1982. It is quite conceivable that Hahn's condition improved greatly since his retirement. Also, the board should not be allowed to

rely on the findings of these examinations since it was the unexplained seven-month delay by the board in starting the hearings and its nine-month delay in concluding them that resulted in Hahn not being examined by the two board psychiatrists until many months after his retirement.

The record discloses that three of the four psychiatrists who had examined Hahn near the time of his resignation concluded that he was unfit for duty. Accordingly, we hold the board's decision disallowing plaintiff's disability pension to be against the manifest weight of the evidence.

Plaintiff also contends that his right to a disability pension was not terminated by his resignation, since he applied for the pension one month before he resigned. In that resignation, he also expressly preserved any rights he had based on the pension application.

■ At the outset, we note that the rules governing police and firemen's pensions are to be liberally construed in favor of those to be benefitted. (*Jahn v. City of Woodstock* (1981), 99 Ill. App. 3d 206, 208, 425 N.E.2d 490; *Board of Trustees v. Department of Insurance* (1976), 42 Ill. App. 3d 155, 159, 356 N.E.2d 171.) We shall consider the parties' assertions with this principle in mind.

The board initially cites several authorities to support its contention that a voluntary resignation completely severs a police officer's membership in a police department and his right to a pension or other benefits which might otherwise have accrued to him as a member. (*Stearns v. Board of Fire & Police Commissioners* (1978), 59 Ill. App. 3d 569, 572-73, 375 N.E.2d 877; *Bauer v. Saper* (1971), 133 Ill. App. 2d 760, 763, 272 N.E.2d 703; *State ex rel. Fox v. Board of Trustees* (1964), 148 W. Va. 369, 376, 135 S.E.2d 262, 266; 60 Am. Jur. 2d *Pensions & Retirement Funds* sec. 58 (1972).) However, these cases are inapposite to the situation here, since plaintiff applied for the pension prior to resigning and specifically preserved his rights in his resignation. Under these circumstances, we are not persuaded that plaintiff intended to relinquish his rights to the pension. See *City of Chicago ex rel. Martin-Trigona v. O'Malley* (1978), 69 Ill. 2d 474, 480, 372 N.E.2d 671; *Miller v. City of Wilmington* (Del. Ch. 1971), 285 A.2d 443, 446, *aff'd* (Del. 1972), 293 A.2d 574.

■ The case of *Freberg v. Board of Trustees* (1970), 128 Ill. App. 2d 369, 262 N.E.2d 22, *appeal denied* (1971), 45 Ill. 2d 589, is instructive in this regard. There, in denying a pension to a discharged fireman, we said that the statutory language

> "implies that the individual must *still be* a fireman at the time of application. Additionally, we interpret the words, 'any fire-

man', to mean a fireman on active duty, one on inactive duty, one on a leave of absence, one suspended, or one retired, but not an individual who has been discharged." (128 Ill. App. 2d 369, 374.)

Similarly, we construe the phrase "any policeman" in section 3—114.2 of the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 3—114.2) to encompass a retired police officer, inasmuch as the statute itself envisions that the officer's condition will necessitate "suspension or retirement." This is particularly true where, unlike the situation in *Freberg*, the officer applies for the pension prior to resigning from the police department. Indeed, it is clear that plaintiff did not resign with the expectation of severing all of the benefits of his position. He retired as a disabled officer, just as section 3—114.2 of the Pension Code anticipates, and is therefore entitled to the benefits of those provisions.

Challenging this view, the board argues that the provisions of section 3—116 of the Pension Code mandate that a pensioned officer be subject to recall for examination and emergencies and that plaintiff's retired status makes this impossible. That statute states:

"A policeman whose duty is suspended because of disability may be summoned to appear before the Board, and to submit himself thereto for examination as to his fitness for duty. *** If any member of the police force who may be retired for disability *** has been found upon medical examination to have recovered from disability, the Board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties of his position. In case of emergency a disabled member may be assigned and shall perform such duty as the chief of police or chief officer of the municipality may direct ***." (Ill. Rev. Stat. 1981, ch. 108½, par. 3—116.)

Defendant supports this assertion with cases from other jurisdictions holding that pensions are for the benefit of the municipality, not the officers, and are given to reward efficiency and encourage cooperation in causes of emergency. *City of Wilmington v. Williams* (Del. 1979), 399 A.2d 203, 205; *Board of Trustees v. Koman* (1956), 133 Colo. 598, 602, 298 P.2d 737, 739-40.

We decline to accept this characterization of section 3—116. In doing so, we note initially that States have disagreed as to the purpose of pensions (*Holt v. Board of Police & Fire Pension Commissioners* (1948), 86 Cal. App. 2d 714, 719, 196 P.2d 94, 97), and Illinois courts have not yet ruled on this matter. Nevertheless, in light of the well-established liberal construction to be accorded the pension provi-

sions, and the beneficient policy behind the disability pension program, we hold that plaintiff's retirement did not deprive him of his right to a disability pension, as section 3—116 of the Pension Code specifically anticipates that members may be retired. Therefore, when the statute grants the board and chief of police power to summon a pensioned officer, for examination and emergency duty, respectively, it is clear that the officer's retirement status cannot abrogate his duty to respond. Instead, the duty of the pension recipient to respond under section 3—116 of the Pension Code must be based on the right of the disabled officer to receive the pension funds. Should he refuse to submit to a board examination or perform emergency duties, it seems apparent that his disability pension payments may be terminated. Under this reasoning, the fact that plaintiff retired prior to receiving his pension is inconsequential.

Accordingly, we reverse the decision of the circuit court and order the board to award plaintiff a "not on duty" disability pension.

Reversed.

HOPF and REINHARD, JJ., concur.