Joseph Rotella, Plaintiff-Appellee, v. Civil Service Commission of the City of Chicago, and Milton Pikarsky, Commissioner of Public Works of the City of Chicago, Defendants-Appellants.

Gen. No. 50,643.

First District, First Division.

September 19, 1966.

Rehearing denied October 11, 1966.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Ronald S. Cope, Assistant Corporation Counsel, of counsel), for appellants.

Michael F. Ryan and Richard F. McPartlin, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Joseph C. Rotella, a Supervising Timekeeper in the Department of Public Works of the City of Chicago, was charged in 1964 with "Conduct unbecoming an employee of the City of Chicago" and "Inefficiency in the Service." After a hearing, the Civil Service Commission of the City of Chicago found him guilty and discharged him from his position. Plaintiff then filed this action under the Administrative Review Act (Ill Rev Stats, c 110, § 264 et seq., (1963)); and after a hearing the Circuit Court of Cook County held that the finding of the Commission was not supported by the evidence, was contrary to the manifest weight of the evidence, and reversed the Commission's finding. The defendants appeal, contending that the Commission's finding was amply sup-

ported by the evidence and that the plaintiff did not satisfy his burden of showing the Commission's finding to be contrary to the manifest weight of the evidence.

The charge against the plaintiff, as amended, was based upon the following alleged conduct:

That the said Joseph Rotella accepted the proceeds of City payroll checks covering the period of September 16, 1963, to September 30, 1963, and October 1, 1963 to October 15, 1963, which contained payments for overtime work which he had in fact not performed during the said periods.

Plaintiff was originally hired by the Department of Public Works in 1954, and held the position of Supervising Timekeeper from 1962 until he was suspended in 1964 pending disposition of these charges. The record reveals that while plaintiff did not work during the period of September 16–30, 1963, he was paid at regular rates for eleven seven-hour days of "compensatory overtime used," and for 34 additional hours at overtime rates. During the period of October 1–15, 1963, plaintiff actually worked 49 hours at regular rates and 20½ hours at overtime rates. He was paid not only for these hours, but also for 28 hours of "compensatory overtime used" at regular rates and for an additional 13½ hours at overtime rates.

There is no dispute either as to the number of hours actually worked by the plaintiff during these periods, or as to the number of hours for which he received payment. Plaintiff contends that the difference represents compensation for overtime hours which he had accumulated more than four years earlier, and for which he had never been compensated; and that this method of compensation was proper under the circumstances of this case. The Commission concluded in part, however, that plaintiff was issued payroll checks in excess of the amount due him, and that he knew or should have known

that he was not entitled to such overpayments. It is this finding which we must review.

The relevant rules governing payroll procedure, as read into the record from a document entitled, "Procedures and Forms for Standardized Time-keeping and Payroll Operations," provided as follows:

> CU—*Compensatory time used*—Use of compensatory time earned shall be so scheduled that it will not interfere with the operation of the department. Compensatory time may be used, either in part of in full, at the discretion of the department head concerned and reported through the Time-keeper, provided that compensatory time earned shall be used within three months after its accrual, unless extension of this period is specifically authorized in advance by the Comptroller.

> *Note:* Before separation, employees will be compensated for earned time off credit that has not lapsed by equal time off. When the required amount of overtime accumulated in an emergency is excessive and compensating time off cannot be granted due to the heavy work load involved, payment of overtime may be made in cash, at not to exceed the overtime rate of 51 cents per hour for each $1,000 of annual salary, provided such action is authorized by the department head and provided budgeted funds are available.

When these rules, which plaintiff testified he knew, are applied to the facts in this record, several problems confront plaintiff's contention that he was entitled to these payments as delayed compensation. With respect to the time for which plaintiff received pay at regular rates for "compensatory overtime used," the rules provide that employees must use accumulated overtime within three months after it was accrued, unless specific authorization has been made in advance by the Comptroller. Here,

84

plaintiff claimed to be using overtime hours accumulated at least four years earlier, and no evidence was offered as to any authorization by the Comptroller. There were also problems relating to the cash compensation plaintiff received for overtime hours not worked during the period, which amounted to 34 hours in the September period and 13½ hours in the October period. As prerequisites to allowing cash compensation for overtime, the rules require the authorization of the department head, the showing that emergency circumstances and heavy workload prevent the granting of compensatory time off, and the availability of budgeted funds. Plaintiff testified that while his immediate supervisor, Mr. Stromback, had authorized the payment for overtime in cash, he did not know whether or not Stromback had received authority from the department head. (Plaintiff later testified that Stromback told him the department head had authorized the cash payment.) Plaintiff's only other witness, Robert J. Karr, who was also a timekeeper and who was responsible for the payroll upon which plaintiff was listed, testified that the authority for those payments came only from Stromback, as far as he knew. We note that the department head, who was still employed by the City at the time of the hearing, was not called to testify. Furthermore, there was no showing that the work load was so heavy that it was impossible to grant the plaintiff time off for his accumulated hours of overtime. Finally, there was no evidence of the availability of budgeted funds for payment of overtime, either at the time the hours were worked or at the time of the payments.

 In suits brought under the Administrative Review Act, the findings and conclusions of the administrative agency on questions of fact are prima facie true and correct. Ill Rev Stats, ch 110, § 274 (1963). The Circuit Court can set aside those findings only where the findings are against the manifest weight of the evidence. Bruno v.

85

Civil Service Commission, 38 Ill App2d 100, 186 NE2d 108. Where the commission's finding is supported by ample evidence and is not contrary to the manifest weight of the evidence, the fact that the court, if it had been hearing the case originally, would have from the evidence reached a conclusion different from that reached by the commission is immaterial. Adamek v. Civil Service Commission, 17 Ill App2d 11, 149 NE2d 466.

■ After a careful review of the record in this case, we conclude that there was substantial evidence, as discussed above, to support the Commission's findings that plaintiff was issued payroll checks in excess of the amount due him, and that he knew or should have known he was not entitled to such overpayments. These findings were not contrary to the manifest weight of the evidence, and the Circuit Court erred in finding otherwise.

The judgment of the Circuit Court of Cook County is therefore reversed, and the findings and decision of the Civil Service Commission of the City of Chicago are affirmed.

Judgment reversed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.