THE PEOPLE *ex rel.* LARRY COKER *et al.*, Plaintiffs, *v.* EDWARD OWEN *et al.*, Defendants (Larry Coker, Plaintiff-Appellee; Hillard Shasteen, Plaintiff-Appellant; Edward Owen, Defendant-Appellant; Inus Mullins, Defendant-Appellee).

Fifth District   No. 82—282

Opinion filed July 21, 1983.

James L. Van Winkle, of Van Winkle and Van Winkle, of McLeansboro, for appellant Edward Owen and for appellee Inus Mullins.

C. Mart Watson, of Law Offices of Watson and Murphy, of Eldorado, for appellant Hillard Shasteen and for appellee Larry Coker.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

This appeal arose out of *quo warranto* proceedings brought by plaintiffs Larry Coker and Hillard Shasteen, challenging the authority of defendants Edward Owen and Inus Mullins to hold certain offices in the village of Broughton, Illinois. Plaintiffs were granted leave to file the *quo warranto* action in their capacities as elected president and elected trustee, respectively, and as rival claimants to those offices. In Mr. Coker's suit against Edward Owen for the office of president of the village, both the plaintiff and the defendant moved for summary judgment. The trial court granted plaintiff's motion and reinstated him in his position as village president. In Mr. Shasteen's suit against Inus Mullins for the trustee's position, plaintiff's motion for summary judgment was denied. Consequently, Mr. Mullins was declared to be the duly appointed trustee for the village.

Defendant Edward Owen and plaintiff Hillard Shasteen appeal the denial of their motions for summary judgment. For the following reasons, we reverse the trial court's decision with respect to Mr. Owen and affirm the denial of summary judgment with respect to Mr. Shasteen.

The events leading up to the filing of the *quo warranto* proceedings must be set forth briefly. As of November 9, 1981, plaintiff Larry Coker was the elected president of the village of Broughton and plaintiff Hillard Shasteen was an elected trustee of the village. At a regular meeting conducted on that date, a dispute arose over the issuance of a liquor license to a Broughton citizen. As a result of the dispute, Mr. Coker obtained a piece of paper from the village clerk and drafted his resignation. He wrote that he was resigning due to his work schedule and employment. He handed it to the village clerk, instructed her to read it aloud, and thereafter took a seat in the audience where he remained for the duration of the evening. A motion was made and a second received not to accept the resignation. The board, however, did not vote on the motion. Also at that time, Hillard Shasteen drafted his resignation on the same paper as Coker's and left it lying on the meeting table. Due to the confusion caused by the resignations, the meeting was not formally adjourned. The written resignations remained in the possession of the village clerk for nearly one month. On December 3, upon Coker's request, the clerk returned his resignation to him. Mr. Shasteen received his on December 4.

A special meeting of the village board was held on December 9 for the sole purpose of adjourning the November meeting. The clerk read a letter from the plaintiffs dated December 3, 1981, in which

they attempted to withdraw their resignations.

A regularly scheduled meeting then took place on December 14. Coker presided at the meeting but, before roll call could be taken, three board members walked out in protest. One week later a special meeting was called to pay village bills. All the members attended. The board voted to pay the bond for village president Larry Coker. At the next regularly scheduled meeting, January 11, 1982, a question immediately arose concerning the authority of Coker to preside. Coker attempted to take charge, but Edward Owen challenged him on the grounds that Coker had effectively resigned. Coker tried unsuccessfully to cancel and adjourn the meeting; however, Owen was appointed acting village president by vote of the remaining members. Coker, Shasteen and a third board member refused to participate. At a special meeting on the 18th, Edward Owen filed his oath of office, bond and certificate of election. These were approved by the board. On the 25th, Inus Mullins was appointed village trustee to fill the vacancy created by Shasteen's resignation. Shasteen and Coker thereafter filed suit challenging the authority of Owen and Mullins to hold office.

The issue on appeal is whether the trial court erred in granting plaintiff Larry Coker's summary judgment motion and defendant Inus Mullins' summary judgment motion, and denying those of Edward Owen and Hillard Shasteen.

Initially we will address what appears to be an inconsistent result reached by the trial court, *i.e.*, a finding in favor of one plaintiff but against the other, in nearly identical situations. The record shows that, when it granted Coker's motion for summary judgment, the trial court relied on two factors. It found that Mr. Coker's resignation was not truly voluntary because the pressure from the dispute over the issuance of a liquor license precipitated his resignation. Second, the court stated that the board's subsequent approval of Coker's bond for president confirmed the finding that Coker's resignation was involuntary. The court found no similar circumstances in the case of Mr. Shasteen. Thus, it treated Coker's resignation as either never effectively made or as having been effectively withdrawn. In contrast, it viewed Mr. Shasteen's resignation as final upon its submission to the clerk.

We have examined the record carefully and find no basis to distinguish between the two situations. First of all, neither the deposition testimony of the board members nor the minutes of the November 9 meeting indicate that Mr. Coker's resignation was involuntary or the result of undue pressure put upon him by uncooperative board mem-

bers. The evidence attached to the motions for summary judgment simply does not support such a finding. Likewise, we believe it unpersuasive that Mr. Coker's bond for village president was approved at a specially called meeting. We note that the bond of his rival, Mr. Owen, was approved only one month later. If anything, the evidence shows that a state of confusion existed. It does not reflect the board's endorsement of Coker as village president.

Since we have decided that the plaintiffs in this case are similarly situated, we must next address the merits of their situation. The law in Illinois governing the resignation of public officials is well settled. The leading case, *People ex rel. Adamowski v. Kerner* (1960), 19 Ill. 2d 506, 167 N.E.2d 555, and the line of cases following *Kerner*, suggest that Coker's and Shasteen's resignations must both be deemed effective upon receipt by the village clerk.

In *Kerner*, the defendant sent the Governor a letter resigning as county judge, effective midnight January 31, 1960. The supreme court declared that the defendant's resignation was effective as soon as he delivered it to the Governor, even though defendant attempted to withdraw it on January 29. The court relied on the public policy requirement that there be certainty as to "who are and who are not public officers," noting that "[i]n the event the rights of creditors or public convenience require that there should be no vacancy in the office from which the incumbent seeks to resign, then affirmative action is required of the officer receiving the resignation in order to preclude it from becoming effective." (*People ex rel. Adamowski v. Kerner* (1960), 19 Ill. 2d 506, 512.) The court then held that, in the absence of some affirmative action by the Governor, the county judge's office did become vacant upon the Governor's receipt of the letter and thus an immediate replacement could be sought. It further held that defendant's subsequent attempt to withdraw the resignation was of no effect.

The principles set forth in *Kerner* have been followed in several recent cases. (*City of Chicago ex rel. Martin-Trigona v. O'Malley* (1978), 69 Ill. 2d 474, 480-82, 372 N.E.2d 671; *Allen v. Powell* (1969), 42 Ill. 2d 66, 68-69, 244 N.E.2d 596; *Stearns v. Board of Fire & Police Commissioners* (1978), 59 Ill. App. 3d 569, 572, 375 N.E.2d 877; *Cole v. McGillicuddy* (1974), 21 Ill. App. 3d 645, 646-47, 316 N.E.2d 109.) Most recently, in *Chicago ex rel. Martin-Trigona v. O'Malley*, the issue arose in the context of a declaratory judgment suit to determine the validity of a vote on fuel tax ordinances taken at a Regional Transportation Authority board meeting. The defendant, who had already tendered his letter of resignation, voted on the fuel taxes. The

opponents of the tax argued that the vote was invalid because defendant was no longer a member of the board at the time of the vote.

The court cited *Kerner* for the general rule that "acceptance of a resignation is not necessary for its validity; once it is received, it is effective immediately (if unqualified) or upon the date specified (if a future date is named) and may not be withdrawn." (*City of Chicago ex rel. Martin-Trigona v. O'Malley* (1978), 69 Ill. 2d 474, 481.) It found, however, that the defendant's resignation did not fall within the general rule because it was not effective immediately, nor was it set to occur on a date specified. The letter read:

> "I today tender my resignation as a director of the Regional Transportation Authority, effective at your convenience." (69 Ill. 2d 474, 477.)

The court concluded that the letter amounted to an offer of resignation, effective only upon acceptance. It treated the letter as a "conditional resignation" which required the mayor's acceptance. The mayor refused to accept O'Malley's resignation. Consequently, O'Malley was a member of the board when the vote on the fuel tax ordinances was taken.

Thus, even though in *O'Malley* the court found the defendant's resignation was not effective, it upheld the general rule that a resignation is effective upon receipt and may not be withdrawn. That rule governs the outcome of the present case. Under the circumstances before us, we find that both Coker's and Shasteen's resignations were "unqualified" and were thus effective immediately. (*City of Chicago ex rel. Martin-Trigona v. O'Malley* (1978), 69 Ill. 2d 474, 481.) The resignations were received and filed with the "officer authorized by law to fill such vacancy or to call an election for such purpose." (*People ex rel. Adamowski v. Kerner* (1960), 19 Ill. 2d 506, 512.) In this case, the authorized officer was the village clerk. (See *Swain v. County of Winnebago* (1969), 111 Ill. App. 2d 458, 470-72, 250 N.E.2d 439.) Neither "the rights of creditors nor public convenience were involved in any way to require that there should be no vacancy in the office" of village president or trustee. (*Swain v. County of Winnebago* (1969), 111 Ill. App. 2d 458, 472.) Consequently, no affirmative action was required to keep the resignations from becoming effective. They were effective upon receipt and could not thereafter be withdrawn. *People ex rel. Adamowski v. Kerner* (1960), 19 Ill. 2d 506, 512.

The plaintiffs have pointed out that the meeting at which the plaintiffs tendered their resignations was not formally adjourned until after the plaintiffs' attempted withdrawal of their resignations. Al-

though such a factor would figure prominently in the determination of the validity of any ordinances voted on at the meeting, it has no bearing on whether resignations tendered during the meeting are deemed effective. The resignation of an official is an act which can occur at any time by a filing with the proper authority. Thus, it is insignificant that Coker and Shasteen filed their resignations with the clerk during a meeting which was not adjourned for one month. The resignations were effective upon receipt by the village clerk. The plaintiffs also cite *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 302 N.E.2d 313, for the proposition that if a public body treats a resignation as having been successfully withdrawn, it cannot later contend that the officer resigned. In *Bovinette*, the issue of the effect of a police chief's resignation arose in the context of a suit for wrongful discharge. The defendant city contended that the plaintiff was not entitled to a hearing on his discharge because he had effectively resigned prior to the time of the discharge. The record, however, showed that although plaintiff did send a letter of resignation, he later withdrew it, contending that it had been submitted under "extreme political pressure, intimidation, and harassment." The record further showed that the city council and the city manager treated the resignation as successfully withdrawn. In fact, they informed plaintiff that if a second resignation was not forthcoming by a certain date he would be discharged. He did not comply and the council discharged him. The court held that the city had permitted the withdrawal of the resignation and could not thereafter rely on it to avoid their obligation of providing him a hearing on his discharge.

*Bovinette* is distinguishable from the case before us now. The present case does not involve a wrongful discharge; it is a voluntary resignation. There was no "political pressure, intimidation, and harassment" exerted upon Coker or Shasteen to resign. In fact, the record shows that their resignations greatly upset their colleagues and caused disorder and confusion at several board meetings.

Most importantly, the public policy considerations in *Bovinette* differ from those in the present case. The policy underlying the *Bovinette* decision is the protection of a public employee's due process rights. Thus, a decision that the council could not avoid its obligation to provide the plaintiff a hearing was entirely proper. The public policy consideration which we must focus on in this case was set forth in *Kerner*. It is the need for certainty as to which individuals are actually holding office. (*People ex rel. Adamowski v. Kerner* (1960), 19 Ill. 2d 506, 512.) More specifically, it is the need to discourage resignations tendered to influence the vote of fellow board members or resig-

nations tendered in haste and anger. Although it didn't occur in this case, such conduct can impair the efficiency of public bodies and jeopardize the welfare of the citizens.

Consequently, we hold that the pleadings, depositions and affidavits submitted to the trial court establish that on November 9, 1981, Larry Coker resigned as village president and Hillard Shasteen resigned as trustee. Thus, the defendants Edward Owen and Inus Mullins are entitled to judgment as a matter of law. The trial court's grant of summary judgment in favor of Larry Coker is hereby reversed, and summary judgment is entered in favor of Edward Owen. The trial court's grant of summary judgment in favor of Inus Mullins is affirmed.

Reversed in part. Affirmed in part.

KASSERMAN and WELCH, JJ., concur.