NO. 4-04-0960

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MARY ANN ROHRBACK and VIRGINIA WOOD,

          Plaintiffs-Appellees,

          v.

THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY; BRENDA RUSSELL; THE ILLINOIS DEPARTMENT OF NATURAL RESOURCES; TOM FLATTERY; JOEL BRUNSVOLD; THE ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES; MICHAEL RUMMAN; and THE ILLINOIS CIVIL SERVICE COMMISSION,

          Defendants-Appellants.

and

THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY and THE ILLINOIS DEPARTMENT OF NATURAL RESOURCES,

Counter-Cross-Plaintiffs,

v.

THE ILLINOIS CIVIL SERVICE COMMISSION; MARY ANN ROHRBACK; and VIRGINIA WOOD,

Counter-Cross-Defendants.

))))))))))

)

)

)

)

))))))

Appeal from

Circuit Court of

Sangamon County

No. 04MR66

Honorable

Dennis L. Schwartz,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

The State fired plaintiffs, Mary Ann Rohrback and Virginia Wood, on the ground that they had obtained reappointments to new four-year terms through fraud.  Plaintiffs appealed to the Civil Service Commission (Commission), which overturned the discharges but suspended plaintiffs for 90 days for improperly trying to extend their terms of employment.  The Commission held the reappointments were invalid because plaintiffs had never effectively resigned from their unexpired terms.  

Plaintiffs then brought this action for administrative review.  The employing agencies and the Department of Central Management Services (CMS) filed a counterclaim against the Commission and plaintiffs, asking the circuit court to find the charges to be proved in full and to order plaintiffs' discharge.  The court reversed the Commission's decision in its entirety, finding it to be against the manifest weight of the evidence, and ordered defendants to restore plaintiffs to new four-year terms without the suspensions or any discipline whatsoever.  The employing agencies and CMS appeal.

Because the State, with full knowledge of the facts, advised plaintiffs to enter into these precise transactions, we find the suspensions to be arbitrary and unreasonable.  Further, we find no evidence in the record to support the conclusion that either plaintiff failed to effectively resign.  Therefore, we affirm the circuit court's judgment.   

I. BACKGROUND

A. Rohrback

On May 1, 2001, the State appointed Rohrback to the position of regional manager of the Department of Employment Security.  This was a jurisdiction B position, meaning that after a six-month probationary period (see 20 ILCS 415/8b.6 (West 2000); 80 Ill. Adm. Code §302.300(a)(1) (Conway Greene CD-ROM April 2001)), the State could fire her only for cause (see 20 ILCS 415/8b.16, 8b.19(a) (West 2000)).  The appointment was for four years.  See 20 ILCS 415/8b.19(a) (West 2000); 80 Ill. Adm. Code §302.830(a) (Conway Greene CD-ROM April 2001).  At the end of the term (May 1, 2005), the Director of the Department of Employment Security was to decide whether to renew Rohrback's appointment for another four years.  See 80 Ill. Adm. Code §302.840(a) (Conway Greene CD-ROM April 2001).  Allowing the term to expire without a renewal would have been tantamount to a termination.  See 80 Ill. Adm. Code §302.840(b) (Conway Greene CD-ROM April 2001).

On March 28, 2003, the State fired Rohrback.  According to the charges for discharge, she had "engaged in" "multiple employment transactions in September 2002 that were designed to restart [her] appointment and improperly lengthen the term of [her] employment."  Those alleged transactions were as follows:  (1) she resigned her position as regional manager on August 30, 2002; (2) she accepted a different position "in Finance and Administration" on September 1, 2002; (3) she resigned that position on September 12, 2002; and (4) she returned to her original position as regional manager on September 13, 2002, for a new four-year term.  The charges accused Rohrback of making "false statements and misrepresentations" in that she "authorized two transaction documents attesting that [she] separated or resigned"--first from her original position and then from the second position.  According to the charges, the representations in those "transaction documents" were false in that Rohrback never really "separated or resigned" from her original position and never "actually report[ed] to" the second position or "assume[d] its duties."  The charges further accused her of "manipulat[ing] the [p]ersonnel [r]ules of the State of Illinois and circumvent[ing] such rules for [her] own financial benefit and gain."  The charges did not specify which personnel rules she had manipulated and circumvented.

Rohrback appealed to the Commission, and, after an evidentiary hearing, the administrative law judge (ALJ) issued a recommended decision.  Rohrback was the only witness to testify in the hearing.  According to her testimony, she received a call from Antoinette Crossgrove, the human resources manager of the Department of Employment Security.  Rohrback could not remember the date when Crossgrove called, but she remembered that Crossgrove called her only once.  Crossgrove explained to Rohrback that even though Rohrback's current term had not yet expired, Rohrback could receive a new four-year term through a series of transactions suggested by the Governor’s office.  Rohrback had to resign her position of regional manager, accept an interim position, resign the interim position, and then accept another position (not necessarily that of regional manager) for a new term.  Crossgrove advised her to write two letters and told her what to say in them.

The letters were plaintiff's exhibit Nos. 4 and 5.  Both were addressed to the Director of the Department of Employment Security and signed by Rohrback.  Rohrback testified she typed them on her computer at work.  The first letter, dated August 30, 2002, reads:  "Please allow this letter to serve as my resignation effective August 30, 2002.  I am resigning to accept another job."  That letter was to serve as her resignation from the original position and her acceptance of the interim position.  The second letter, dated September 12, 2002, reads:  "Please allow this letter to serve as notice of my resignation effective September 12, 2002.  I am resigning to accept a term appointment."  That letter was to serve as her resignation from the interim position and her acceptance of the new term appointment.

In the administrative hearing, the attorney for the Department of Employment Security asked Rohrback:

"Q. Okay, did you--when you prepared the letters, when you talked to Ms. Crossgrove and prepared the letters, did you prepare them--first of all, did you prepare them right after the conversation?

A. Yes.

Q. Does that mean that the conversation with Ms. Crossgrove must have taken place sometime around September 18th of 2002?

A. Not necessarily.

* * *

Q. You would have faxed [the letters] to Ms. Crossgrove shortly after you prepared them, right?

A. Yes.

Q. Okay, so it would have been September 18th, right?

A. It may have been--these may have been duplicates.  Our Human Resources Department was absolutely notorious for losing paperwork.

Q. Okay, did you send multiple copies to Ms. Crossgrove?  Do you recall doing that?

A. I don't.

Q. Do you have any reason to doubt that you faxed the letters to her once and only once on September 18th?

* * *

[A.] No."

It appeared to the ALJ that despite the dates Rohrback had typed in the heading of the letters--August 30 and September 12, 2002--she actually faxed the letters to Crossgrove at the same time, on September 18, 2002.  Petitioner’s exhibit Nos. 4 and 5 appeared to be fax copies of the letters, with the date of transmission, September 18, 2002, mechanically printed at the top of each.  Rohrback remembered drafting and signing only one letter, although she conceded that both letters appeared to have her signature on them and she therefore must have prepared them both.  She did not recall the dates when she actually signed the letters but could think of no reason why she would have put inaccurate dates on them.           

Rohrback admitted that when signing the letters, she did not know what interim position she was accepting and from which she was resigning.  Despite her submission of the resignation letters, she remained in the same office and kept working as before.  No one assigned her different duties or told her to report to a different supervisor.  She testified she would have done as she was told.  She was aware of many employees in her region who worked outside their job classifications.

Even though nothing changed for Rohrback in the workplace, CMS processed her resignation from the position of regional manager, her appointment to the interim position, her resignation from the interim position, and her reappointment to the position of regional manager.  The corresponding personnel action forms bear the signature of Crossgrove, dated September 18, 2002; the signature of the Director of Employment Security, undated; and the signature of the Director of CMS, dated October 25, 2002.  Next to the spaces for the "transaction name" and "trans[action] code," the forms have a space for the "effective date" of the transaction.  The effective dates are as the State alleges in the charges for discharge.     

The ALJ found that because the transactions, on their face, "appear[ed] to meet the muster of [CMS] as it existed prior to January 14, 2003," they were not "void or even voidable."  To the ALJ’s thinking, it was of no great consequence whether Rohrback knew "where she would wind up and what position she would ultimately hold."  She was acting at the direction of Crossgrove and, ultimately, the Governor's office, and she could have justifiably trusted them to lead her down the path of legality.  The ALJ found no false statement by Rohrback and no attempt by her to improperly extend her employment or otherwise manipulate or circumvent the personnel rules.  He recommended that Rohrback be returned to the position from which she was discharged, without any disciplinary action.

On February 19, 2004, the Commission issued the following decision:

"The undersigned, having read the recommended decision of the [ALJ] dated February 6, 2004[,] hereby adopt said decision to the extent not inconsistent with the findings set forth below ***.

We do not agree with the [ALJ’s] [']Conclusion and Recommendation.[']  The totality of the evidence indicates that no resignation from the position of [r]regional [m]anager[,] as contemplated by the Personnel Code[,] occurred.  The [p]etitioner has proven by a preponderance of the evidence that the [r]espondent did not intend to relinquish the position[;] nor did an unequivocal act of relinquishment occur.  Therefore, the [r]espondent was unable to be appointed to the second term from which she was discharged.  

Additionally, we do not agree that the [r]espondent did not knowingly attempt to improperly extend her term of employment.

It is determined that the written charges for discharge approved by the Director of [CMS], State of Illinois, have been proven in part.  Said partially proven charges warrant a 90-day suspension and the return of the [r]espondent to her initial term position that ends April[] 2005."

B. Wood

On March 16, 1999, the State appointed Wood to the position of general manager of North Point Marina.  This was a jurisdiction B position in the Department of Natural Resources, and the term was four years.  

On March 28, 2003, the State fired Wood for the same reasons it had fired Rohrback:  "false statements and misrepresentations" and "manipulat[ion]" and "circumvent[ion]" of unspecified personnel rules "for [her] own financial benefit and gain."  According to the charges for discharge, the State possessed documents attesting that Wood had (1) resigned her position of regional manager on August 9, 2002; (2) filled a position in the Office of the Director of Internal Investigations on August 12, 2002; (3) resigned that position on August 15, 2002; and (4) returned to her original position of regional manager on August 16, 2002, for a new four-year term.  The alleged falsehood consisted of signing transaction documents attesting that she had resigned from the original position and from the second position when, in fact, she had never resigned from either position and had never reported to or assumed the duties of the second position.

Wood appealed to the Commission.  She was the only witness to testify in the administrative hearing.  According to her testimony, in July 2002, the Governor's Deputy Chief Legal Counsel, Rob Powers, telephoned her and said someone would get back with her about a reappointment to a new term.  April Cook was the Director of Human Resources of the Department of Natural Resources.  In August 2002, Cook telephoned Wood and explained to her how to obtain the promised reappointment.  Wood was to submit two letters, and Cook told her what to say in them.  

The ALJ admitted these letters into evidence as plaintiff's exhibit Nos. 5 and 6.  Wood testified she wrote the letters on or about August 6, 2002, which was the date of transmission the fax machine had printed on them.  The first letter, dated August 7, 2002, reads as follows:  "Effective Friday, August 9, 2002, I wish to resign my position[] as [g]eneral [m]anager of North Point Marina *** in order to accept another position with the State of Illinois."  The other letter, undated, reads as follows:  "Effective August 15, 2002, I wish to resign my exempt position in order to accept another position with the State of Illinois."  In personnel action forms signed by both the Director of the Department of Natural Resources and the Director of CMS, Wood was separated from her original position on August 9, 2002; moved into the interim position on August 12, 2002; separated from the interim position on August 15, 2002; and then moved back into the original position on August 16, 2002--for a new term.  It appears in these forms that both the original position and the interim position were called "senior public service administrator," although the positions had different position numbers.

Wood testified that when submitting the two letters to Cook, she did not know what the interim position would be or if the State would reappoint her to the original position as opposed to some other term position.  Some nine months after Wood sent the two letters, a state officer confirmed to her that she had indeed been appointed to an interim position and then reappointed to the original position.  

This job change seemed unique to Wood in that no one assigned her different duties or told her to work in a different office.  At all times, however, she was ready and willing to do whatever her employer asked.  She kept coming to work and receiving paychecks.  She had no expertise in personnel matters and, as the ALJ quoted her, she "'wouldn't [have] dream[ed] of questioning experts.'"

The ALJ found that Wood had made no false statement, had not attempted to improperly extend her employment, and had not manipulated or circumvented the personnel rules.  Rather, she "was acting the way she acted at the direction of her supervisors."  The ALJ recommended that Wood be returned to her position as general manager of North Point Marina.  The Commission agreed with the ALJ's recommended decision, with the same two exceptions as in Rohrback's case:  (1) Wood did not resign from her position of manager and, therefore, was "unable to be appointed to the second term from which she was discharged," and (2) she did in fact "knowingly attempt to improperly extend her term of employment."

C. Proceedings in Circuit Court

Plaintiffs brought this action for administrative review.  The employing agencies and CMS filed a counterclaim against plaintiffs and the Commission, asking the circuit court to find that the charges had been proved in full and that the charges warranted the discharge of plaintiffs.  The court rejected the counterclaim and reversed the Commission's decision, finding that it was against the manifest weight of the evidence.  The court ordered the reinstatement of plaintiffs to new four-year terms, without suspension or any other discipline.  

This appeal followed.       

II. ANALYSIS

A. Rohrback

1. 
The Effectiveness of Her Resignation 

The Commission concluded that Rohrback never effectively resigned from her position as regional manager and, therefore, the State could not have appointed her to a new four-year term in that position.  We consider the Commission's factual conclusions to be "prima facie true and correct."  735 ILCS 5/3-110 (West 2004).  If we find any evidence in the record to support the conclusion that Rohrback failed to resign, we will uphold that conclusion.  See 
Merrifield v. Illinois State Police Merit Board
, 294 Ill. App. 3d 520, 528, 691 N.E.2d 191, 198 (1997).    

Case law holds that if a public officer submits a resignation that, by its terms, is effective 
immediately
 or on a 
future
 
date
, the resignation is an unalterable fact and the officer cannot withdraw the resignation and cannot negate it by continuing to perform the job.  
People ex rel. Adamowski v. Kerner
, 19 Ill. 2d 506, 512, 167 N.E.2d 555, 558 (1960); 
Chicago ex rel. Martin-Trigona v. O'Malley
, 69 Ill. 2d 474, 481, 372 N.E.2d 671, 674 (1978); 
Weber v. Board of Fire & Police Commissioners of the Village of Wheeling
, 204 Ill. App. 3d 358, 362, 562 N.E.2d 318, 320 (1990); 
People ex rel. Coker v. Owen
, 116 Ill. App. 3d 506, 510, 451 N.E.2d 1021, 1024 (1983); 
Stearns v. Board of Fire & Police Commissioners of the City of Carbondale
, 59 Ill. App. 3d 569, 572, 375 N.E.2d 877, 880 (1978).  The purpose of that rule is to prevent confusion as to who is and who is not a public officer.  
Kerner
, 19 Ill. 2d at 512, 167 N.E.2d at 558.  Defendants argue that because the period during which Rohrback purported to relinquish her original position (August 30 to September 12, 2002) had already passed when she faxed the letters to Crossgrove on September 18, 2002, Rohrback never truly resigned:  the resignation was purely retroactive and, therefore, no resignation at all.    

We find no evidence in the record that the resignation was retroactive.  The letters that Rohrback faxed to Crossgrove on September 18, 2002, evidently memorialized an earlier oral agreement.  The date of that oral agreement is unclear.  Rohrback testified she "prepared" the letters to Crossgrove "right after" her telephone conversation with Crossgrove and faxed the letters to Crossgrove "shortly after" she prepared them.  As Rohrback also testified, however, it does not necessarily follow that her conversation with Crossgrove occurred "around September 18th."  Having accepted the effective dates of resignation with full knowledge of the facts, the State of Illinois is in no position to question them.  The effective dates must have been prospective at the time of the oral agreement, or else Crossgrove, the Director of the Department of Employment Security, and the Director of CMS surely would not have approved them.  We conclude that Rohrback resigned from her original position and was reappointed to a new term.  The Commission's conclusion to the contrary is against the manifest weight of the evidence.      

2. 
False
 
Statements

Defendants argue that by backdating the two letters that she faxed to Crossgrove on September 18, 2002, Rohrback falsified her employment records and, for that reason, deserves to be fired or, at a minimum, to be suspended for 90 days.  All the date on a letter purports to represent is when the author signed the letter, nothing more.  The date of signature on a letter of resignation is irrelevant to the State.  The resignation takes effect not when the employee 
signs
 the letter of resignation but when the employee 
communicates
 to the employer, in writing or otherwise, an intent to unconditionally relinquish the position.  
Kerner
, 19 Ill. 2d at 512, 167 N.E.2d at 558; 
Weber
, 204 Ill. App. 3d at 361, 562 N.E.2d at 320.  The record contains no evidence that Rohrback tried to falsify the date she actually transmitted the letters to Crossgrove.  The backdating of the letters had no practical relevance to the State and was "unrelated to the requirements of the service."  
Zaremba v. Department of Vehicle Services
, 317 Ill. App. 3d 82, 89, 739 N.E.2d 561, 567 (2000).  

3. 
Attempt to Improperly Extend Her Term

The Commission suspended Rohrback for 90 days on the ground that she "knowingly attempt[ed] to improperly extend her term of employment."  Considering that the transactions were not criminal and they were recommended to Rohrback by her chain of command all the way up to the Governor's office, we consider the suspension to be arbitrary and unreasonable.  No fair-minded employer could actively encourage an employee to take a course of action and then punish the employee for doing so.  To defraud the State, Rohrback had to knowingly make a false representation to the State with the intent of inducing the State to act in reliance on the representation.  See 
Board of Education of City of Chicago v. A, C & S, Inc.
, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (1989).  That is not what happened here.  The State made a representation to Rohrback with the intent of inducing 
her
 to act in reliance.  Invoking the authority of the Governor's office, Crossgrove pointed out a path through the dense thicket of personnel rules.  Rohrback trusted her judgment and expertise and took that path.  It is simply unrealistic to expect Rohrback, in such a situation, to second-guess the human resources manager, who claimed to have the Governor's approval.

B. Wood

1. 
The Effectiveness of Her Resignation

The legal effect of undisputed facts is a question of law, which we determine 
de
 
novo
.  
Fitzpatrick v. Human Rights Comm'n
, 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491 (1994); 
Bridgestone/Firestone, Inc. v. Doherty
, 305 Ill. App. 3d 141, 147, 711 N.E.2d 799, 804 (1999).  It is undisputed that on August 6, 2002, Wood faxed two letters to the human resources manager of the Department of Natural Resources:  (1) a letter resigning the position of general manager effective August 9, 2002, for the purpose of accepting an interim state position and (2) a letter resigning the exempt position and accepting a reappointment to the position of general manager effective August 15, 2002.  The letters do not specify what the interim position was or to which position Wood would be reappointed, but the personnel action forms, to which the letters were attached, specified the positions and position numbers.    

The Commission erred in holding that Wood failed to resign from her position of general manager.  On the contrary, she did, in fact, resign:  she filed a letter of resignation, which was, as a matter of law, dispositive.  The letter stated she resigned; therefore, by operation of law, she resigned--regardless of her subjective intentions and subsequent actions.  See 
Kerner
, 19 Ill. 2d at 512, 167 N.E.2d at 558; 
Pace v. People ex rel. McMeen
, 50 Ill. 432, 434 (1869); 
Weber
, 204 Ill. App. 3d at 362, 562 N.E.2d at 320; 
Stearns
, 59 Ill. App. 3d at 572, 375 N.E.2d at 880.  Wood could not negate the resignation by continuing to perform the duties of a general manager or by otherwise acting as if she had never resigned.  See 
Owen
, 116 Ill. App. 3d at 510, 451 N.E.2d at 1024; 
McMeen
, 50 Ill. at 434; 
O'Malley
, 69 Ill. 2d at 479, 372 N.E.2d at 673.  Insomuch as she continued performing the same duties as before, she was working outside her job classification.  

Thus, we disagree with the Commission's conclusion that Wood failed to resign and that her reappointment for a new term was ineffective.  Because she successfully resigned and was reappointed to a new term, the suspension was arbitrary.  As in Rohrback's case, one cannot reasonably punish Wood for a transaction that was legitimate and successful.

2. 
Accepting Compensation to Which She Was Not Entitled

Defendants argue the State had cause for discharging Wood because after unconditionally resigning her position as general manager of the North Point Marina, she stayed on the job and accepted "thousands of dollars" in compensation to which, having reassigned, she was not entitled.  That argument has two fatal weaknesses.  First, Wood resigned her position as general manager not to be unemployed but to accept an unspecified interim position--which would, of course, have been a paying position.  Because she did not know what the interim position would be, she essentially placed herself at her employer's disposal, to perform whatever job duties the employer assigned.  Defendants cite no evidence that the compensation Wood received was greater than that which the State owed her for the duties she performed--or, more to the point, that she knew or should have known that the compensation was too high.  Both the original position and the interim position were called "senior public service administrator."  In the cases defendants cite, the employees knew or should have known they had been overpaid.  
Rotella v. Civil Service Comm'n of the City of Chicago
, 75 Ill. App. 2d 81, 86, 220 N.E.2d 865, 867 (1966); 
Bruno v. Civil Service Comm'n of the City of Chicago
, 38 Ill. App. 2d 100, 107-08, 186 N.E.2d 108, 112 (1962).  If Wood did not know the interim position she was accepting, it is unclear how she would have known the State was overpaying her (that is to say, 
if
 the State was overpaying her--a proposition that has not been proved).

Second, the State never charged Wood with accepting unearned compensation.  Instead, the State charged her with signing documents "attesting that [she had] separated or resigned from a position 
when, in fact, [she] did not do so
."  (Emphasis added.)  Charges in an administrative proceeding need not be as exact and detailed as judicial pleadings, but they must contain a clear statement of the theory on which the agency intends to rely, so that the employee can prepare a defense.  
Burns v. Police Board of the City of Chicago
, 104 Ill. App. 3d 612, 615, 432 N.E.2d 1300, 1303 (1982); B. Schwartz, Administrative Law §6.5 at 306 (3d ed. 1991); 2 C. Koch, Administrative Law & Practice §5.32[2] at 123 (2d ed. 1997).  On appeal, defendants pursue the theory that Wood 
did
 in fact resign from her position as general manager and that she thereafter accepted compensation to which she was not entitled, being no longer an employee.  That theory is in diametric contradiction to the theory in the charges for discharge, 
i.e.
, that Wood falsely attested to resigning when in fact she did 
not
 resign but instead continued to occupy the position and accept pay.  In the charges for discharge, the State alleged that Wood "circumvent[ed] [the personnel] rules for [her] own financial benefit and gain," but that allegation did not notify her that she accepted pay for a position she no longer occupied.

Defendants represent to us that the argument they now make--that Wood should be punished because she continued to accept pay after resigning--was the "precise argument" the State made, without objection, in its briefs to the administrative law judge, the Commission, and the circuit court.  On the contrary, we have reviewed the pages of the briefs that defendants cite, and the State did not make "precisely" the same argument it makes now.  In the proceedings below, the State argued Wood 
never in fact resigned, as evidenced by her continuing to accept compensation
.  Due process bars defendant's present theory because it contradicts the basic premise of the charges for discharge.  See 
Giampa v. Illinos Civil Service Comm'n
, 89 Ill. App. 3d 606, 611, 411 N.E.2d 1110, 1114 (1980). 

3. 
Fraudulently Resigning From an Interim Job She Never Had 
 In her second letter of resignation, which she apparently faxed to her employer on August 6, 2002 (the same day she faxed the first letter of resignation), Wood stated that effective August 15, 2002, she was resigning the interim position to accept another state job.  Defendants argue that because Wood had no idea what the interim position would be and because she at all times continued to perform the duties of general manager, the second resignation letter was "fraudulent" and constituted cause for discharge or, "[a]t the very least," for the 90-day suspension the Commission imposed.  Defendant's argument is cursory and consists of little more than the conclusory assertion that the described conduct was fraud.

A fraudulent statement is a statement one knew to be false when one made the statement.  
Polivka v. Worth Dairy, Inc.
, 26 Ill. App. 3d 961, 965-66, 328 N.E.2d 350, 354 (1974).  Defendants cite no evidence that on August 6, 2002, Wood knew she would not occupy an interim position.  Just because she did not know as of yet what the interim position would be, it does not follow that she committed fraud.  She could have been relying on the employer to eventually tell her.  As she testified, she was ready and willing to perform whatever duties the employer assigned.

III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

Affirmed.

COOK, P.J., and KNECHT, J., concur.