NO. 4-06-0864      Filed 3/1/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: SOPHIA G.L., a Minor, | ) | Appeal from |
| ANDREW COCHRAN, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Greene County |
| v. | ) | No. 06F18 |
| ALEXIS A. LINDEMAN, | ) | |
| Respondent-Appellee, | ) | |
| and | ) | Honorable |
| JOHN LINDEMAN and YVONNE LINDEMAN, | ) | Lois A. Bell, |
| Intervenors-Appellants. | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

On September 20, 2006, the circuit court of Greene County, Illinois, denied intervenors John and Yvonne Lindemans' (the Lindemans) petition to register a child-custody determination from the superior court of Hendricks County, Indiana.  The Lindemans appeal, arguing the court erred by denying their petition to register.  We reverse and remand for further proceedings.

The record reflects that on September 14, 2005, respondent, Alexis A. Lindeman, gave birth to Sophia G.L. in Indiana. For a short time, Alexis and Sophia lived with Alexis's mother, Kathy Engle.  However, from September 24, 2005, until March 30, 2006, Alexis and Sophia resided with the Lindemans, Alexis's father and stepmother.  On March 30, 2006, Alexis took Sophia to live in Illinois.  It is undisputed that from the date of her

birth until March 30, 2006, Sophia continuously resided in the State of Indiana.

On April 4, 2006, the Lindemans filed a verified emergency petition for custody of Sophia in the superior court of Hendricks County, Indiana, alleging that, under Indiana law, they were Sophia's de facto custodians, Alexis was unfit to care for Sophia, and Sophia's best interests would be substantially and significantly served by placement with them. Although the petition identified Andrew Cochran, petitioner in this case, as Sophia's alleged father, the Lindemans asserted that paternity of Sophia had never been established, Andrew was not present at Sophia's birth, Andrew visited Sophia on only two occasions, and Andrew never signed a paternity affidavit. The Lindemans did not name Andrew as a party in their action. They also alleged that Alexis and Sophia left Indiana on March 30, 2006, and went to live with Andrew and his family in Illinois.

On April 11, 2006, the Indiana trial court conducted a hearing on the Lindemans' petition. The court's order reflects the Lindemans were present and represented by counsel but Alexis was not. John Lindeman testified that he personally served Alexis with the papers that had been filed and that she had personal knowledge of the hearing date. Further, the court noted that it had received a telephone message from an attorney, requesting a continuance on Alexis's behalf. That request was

denied because the court did not grant oral motions.

During the hearing, the trial court heard testimony from the Lindemans and Engle. It found the Lindemans to be Sophia's de facto custodians and that it was in Sophia's best interests that temporary legal and physical custody be granted to them. The court further appointed a guardian ad litem (GAL) for Sophia, ordered Sophia to be brought immediately to Indiana, and scheduled a hearing for April 18, 2006, so that Alexis would have an opportunity to be heard.

Also on April 11, 2006, Andrew filed a petition in the circuit court of Greene County, Illinois, to determine the existence of a father and child relationship and seeking custody of Sophia. On that same day, a hearing on Andrew's petition was conducted before Judge James W. Day. Andrew's counsel presented the trial court with copies of all of the documents filed in Indiana, and Judge Day expressed concern about hearing the case. After initially stating that he would take no action due to on-going proceedings in another state, Judge Day questioned Andrew and Alexis as to whether Andrew was Sophia's father. He then found Andrew to be Sophia's father but reserved further ruling due to pending matters in Indiana. Judge Day then recused himself from the case and assigned it to Judge Lois A. Bell.

On April 17, 2006, Alexis filed a motion to dismiss the action filed by the Lindemans in Indiana for lack of personal

- 3 -

jurisdiction and insufficiency of process. On April 18, 2006, the Indiana trial court conducted a further hearing on the Lindemans' emergency petition for custody. The court noted that the Lindemans and Alexis were present and represented by counsel and that it heard testimony from Alexis. Further, it ordered each party to file a brief regarding jurisdiction, Alexis to return Sophia to the Lindemans within 24 hours and schedule an appointment with the GAL, and further hearing on the matter to be held on April 26, 2006. Alexis did not return Sophia to the Lindemans and, on April 19, 2006, they filed a verified emergency petition for contempt and for a bench warrant to be issued for Alexis's arrest.

On April 21, 2006, Judge Bell entered an emergency order placing joint custody of Sophia with Andrew and Alexis and set the matter for further hearing. On the same date, the Indiana trial court entered an order, noting that Judge Day found Andrew to be Sophia's biological father and finding him to be an indispensable party. The trial court ordered that Andrew be notified of all further pleadings, orders, or motions.

On April 24, 2006, Judge Bell conducted a hearing at which Andrew and Alexis both testified. The trial court also heard testimony from Jeannie McCartney, a child protection investigator. Judge Bell determined that Illinois was the appropriate jurisdiction to make a child-custody determination in

the matter. She then found that it was in Sophia's best interest that temporary joint custody be given to Alexis and Andrew and set the matter for a hearing on permanent custody on May 3, 2006.

On April 28, 2006, the Lindemans filed an emergency limited petition to intervene in the Illinois proceedings and an emergency motion to dismiss Andrew's petition to determine the existence of a father and child relationship for lack of jurisdiction. On May 3, 2006, a hearing was conducted before Judge Bell. She granted the Lindemans' petition to intervene and, after hearing arguments on their motion to dismiss, stated her belief that Indiana was Sophia's "home state" under the Uniform Child-Custody Jurisdiction and Enforcement Act (Act) (750 ILCS 36/101 through 403 (West 2004)). However, Judge Bell also believed that Illinois had jurisdiction and that all of the relevant evidence would be located in Illinois. She stated her intention to contact the Indiana trial court and request that it decline jurisdiction.

On June 15, 2006, the Indiana trial court entered an order retaining jurisdiction of the case. On June 16, 2006, Judge Bell declined further jurisdiction and vacated her prior temporary custody order. On June 20, 2006, the Lindemans filed a petition to register the Indiana court's child-custody determination and a petition for expedited enforcement of that determination. On June 22, 2006, Judge Bell denied the Lindemans' peti-

tion for expedited enforcement and set their petition to register the child-custody determination for hearing.

On July 3, 2006, the Lindemans filed an emergency motion for leave to file a complaint for writ of prohibition, mandamus, or entry of a supervisory order with the Illinois Supreme Court. They sought to compel Judge Bell "to give full faith and credit to [the Indiana trial court's custody order] by issuance of a writ of mandamus and prohibition or issuance of a supervisory order." On August 18, 2006, the supreme court denied the Lindemans' motion.

On September 13, 2006, Andrew filed a contest to registration of the Indiana trial court's child-custody determination. He alleged (1) the order of the Indiana court was flawed because the Lindemans lacked standing, (2) the court's order was based on fraudulent allegations of an emergency, (3) the Lindemans' petition incorrectly and fraudulently labeled them as de facto custodians, (4) custody of Sophia should have rested with Andrew pursuant to the superior-rights doctrine, and (5) the Indiana court either ignored or overlooked the factors set forth in the Act to be used by a court to determine whether jurisdiction should be accepted or declined.

On September 20, 2006, a hearing was conducted on the Lindemans' petition to register. Following arguments by the parties, Judge Bell noted Andrew was not provided with notice of

the original Indiana custody proceeding and notice was handed to Alexis by her father. She determined that there was not proper personal jurisdiction over either parent and denied the petition to register.

This appeal followed.

On appeal, the Lindemans argue the trial court erred by denying their petition to register the Indiana trial court's child-custody determination. Because we are reviewing the legal effect of undisputed facts, review is de novo. Rohrback v. Department of Employment Security, 361 Ill. App. 3d 298, 307, 835 N.E.2d 955, 963 (2005).

Section 201(a) of the Act (750 ILCS 36/201(a) (West 2004)) provides that a court has jurisdiction to make an initial child-custody determination only if:

"(1) th[e] State [in which the court is
located] is the home state of the child on
the date of the commencement of the proceed-
ing, or was the home state of the child
within six months before the commencement of
the proceeding and the child is absent from
th[e] State but a parent or person acting as
a parent continues to live in th[e] State;

(2) a court of another state does not
have jurisdiction under paragraph (1), or a

court of the home state of the child has declined to exercise jurisdiction on the ground that th[e] State is the more appropriate forum under [s]ection 207 or 208 [(750 ILCS 36/207, 208 (West 2004))], and:

     (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with th[e] State other than mere physical presence; and

     (B) substantial evidence is available in th[e] State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of th[e] State is the more appropriate forum to determine the custody of the child under [s]ection 207 or 208 [(750 ILCS 36/207, 208 (West 2004))]; or

     (4) no court of any other state would

have jurisdiction under the criteria speci-
fied in paragraph (1), (2), or (3)."

Under the Act, "home state" is defined as follows:

"[T]he state in which a child lived with
a parent or a person acting as a parent for
at least six consecutive months immediately
before the commencement of a child-custody
proceeding.  In the case of a child less than
six months of age, the term means the state
in which the child lived from birth with any
of the persons mentioned.  A period of tempo-
rary absence of any of the mentioned persons
is part of the period."  750 ILCS 36/102(7)
(West 2004).

Further, section 305(a) of the Act (750 ILCS 36/305(a)
(West 2004)) provides that "[a] child-custody determination
issued by a court of another state may be registered in this
State."  However, a person may request a hearing to contest
registration.  750 ILCS 36/305(d) (West 2004).  Following the
hearing, a circuit court will confirm a registered order, unless
the person contesting registration establishes one of the follow-
ing:

"(1) the issuing court did not have
jurisdiction under [a]rticle 2 [of the Act];

(2) the child-custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under [a]rticle 2 [of the Act]; or

(3) the person contesting registration was <u>entitled</u> to notice, but notice was not given in accordance with the standards of [s]ection 108 [(750 ILCS 36/108 (West 2004))], in the proceedings before the court that issued the order for which registration is sought." (Emphasis added.) 750 ILCS 36/305(d) (West 2004).

The Act clearly sets forth three instances in which a contest to registration will be successful and provides that the burden of proof is with the contesting individual. In this instance, Andrew was the person contesting registration and had the burden of establishing that (1) Indiana did not have jurisdiction under article 2 of the Act, (2) a court with jurisdiction under article 2 of the Act vacated, stayed, or modified the Indiana trial court's custody determination, or (3) he was entitled to receive notice of the Indiana custody proceedings but notice was not given as provided in the Act. A review of the record reflects Andrew failed to prove any of these three occur-

- 10 -

rences.  Thus, the trial court erred by denying the Lindemans'
petition to register.

In his contest to registration, Andrew alleged (1) the
Lindemans lacked standing to file their emergency petition for
custody, (2) the Indiana trial court's custody determination was
based on fraudulent allegations of an emergency, (3) the
Lindemans' petition incorrectly and fraudulently labeled them as
de facto custodians, (4) custody of Sophia should have rested
with Andrew pursuant to the superior rights doctrine, and (5) the
Indiana court either ignored or overlooked the factors set forth
in the Act to be used by a court to determine whether jurisdic-
tion should be accepted or declined.  Andrew did not argue that
one of the three bases for denying registration was present.

Further, Andrew's arguments at the hearing on the
petition to register were similarly deficient.  He did not argue
or establish that Indiana did not have jurisdiction to enter an
initial child-custody determination under article 2 of the Act,
particularly section 201 (750 ILCS 36/201 (West 2004)), regarding
initial child-custody determinations.  Although he asserted the
Illinois trial court modified the Indiana trial court's child-
custody determination, he failed to establish that the Illinois
court had jurisdiction to take that action under the Act.
Moreover, the record reflects that the Illinois court later
vacated that modification.

Finally, although Andrew correctly asserted that he was not given notice of the original Indiana proceedings, he failed to establish that he was entitled to notice. The undisputed facts show paternity of Sophia was not established when the Lindemans filed their emergency custody petition. More specifically, Andrew and Alexis were never married and were not living together at the time of Sophia's birth, Andrew was not present at Sophia's birth, Andrew visited Sophia on only two occasions, and Andrew never signed a paternity affidavit. At no time during the pendency of this case, including on appeal, has Andrew set forth any facts or law establishing his entitlement to notice of the initial child-custody proceedings in Indiana.

The trial court denied the Lindemans' petition to register, finding the Indiana court did not have personal jurisdiction over either Andrew or Alexis. As stated, however, Andrew had the burden of proving that he was entitled to notice of the proceedings but failed to do so. Additionally, the Act clearly states that a contest to registration will be successful if the person contesting registration establishes that he or she was entitled to notice and it was not given. Alexis did not contest registration; therefore, whether she was properly notified of the proceedings was irrelevant.

The Act sets forth three reasons why registration of another state's child-custody determination may be denied and

- 12 -

placed the burden of proof on the party contesting registration. Here, Andrew, as the contesting party, failed to meet his burden and the trial court erred by denying registration.

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

COOK, J., concurs.

MYERSCOUGH, J., dissents.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. The record clearly reflects the Illinois judge called the Indiana judge not once but eight times between May 3, 2006, and June 2, 2006. On June 2, 2006, a secretary or court reporter said the Indiana judge would call back on June 16, 2006, but the judge did not. Instead, the Indiana judge issued a decision. The Illinois judge also wrote the Indiana judge on four occasions between June 16, 2006, and August 21, 2006, requesting that the Indiana judge decline jurisdiction.

Judge Bell stated that she believed Indiana was the child's home state under the Act. However, Judge Bell found that Illinois had jurisdiction and that all of the relevant evidence was located in Illinois. Judge Bell denied the grandparents' petition to register the Indiana order in Illinois because respondent father was not provided notice of the original Indiana custody proceeding and there was not proper personal jurisdiction over either parent.

However, I question whether the Indiana court had jurisdiction over mother, father, or child. At the time of the Indiana emergency order, all three had resided in Illinois from at least March 30, 2006. Yet the Indiana court awarded temporary custody to the grandparents 12 days later without proper notice to the parents and opportunity to be heard as required by both

- 14 -

the Act (750 ILCS 36/205 (West 2004)) and the Parental Kidnaping Prevention Act (PKPA) (28 U.S.C. §1738A (2000)).  Both Acts clearly require parents and physical custodians receive notice and an opportunity to be heard before their child may be removed from their custody.  The Act states:

>"Before a child-custody determination is made under this Act, notice and an opportunity to be heard in accordance with the standards of [s]ection 108 must be given to all persons entitled to notice under the law of this State as in child-custody proceedings between residents of this State, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child."  750 ILCS 36/205(a) (West 2004).

The PKPA states:

>"Before a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated [,] and any person who has physical custody of a child."  28 U.S.C. §1738A(e) (2000).

- 15 -

Clearly, these are the parents of the child and are the physical custodians of the child.  Therefore, they are entitled to proper notice and opportunity to be heard as well as the right to establish the residence of their own child.  For these reasons, the Indiana order is void, Illinois need not recognize that order, and I would affirm the trial court.